Andrew BROWN

v.

Reynaldo TRINIDAD and Norma Trinidad.

Appeal of: Reynaldo Trinidad.

Superior Court of Pennsylvania.

Argued Dec. 9, 2014.
Filed March 9, 2015.

Kevin R. McNulty, Philadelphia, for appellant.

James C. Haggerty, Philadelphia, for appellee.

BEFORE: LAZARUS, J., WECHT, J., and STRASSBURGER, J.*

OPINION BY LAZARUS, J.:

Reynaldo Trinidad appeals from the judgment entered against him in the Court of Common Pleas of Philadelphia County after a jury found he negligently operated a motor vehicle, causing Andrew Brown to sustain serious impairment of a bodily function. After careful review, we affirm.

The trial court summarized the relevant facts as follows:

This negligence action arises from a motor vehicle accident that occurred on November 3, 2011, at the intersection of Harbison and Torresdale Avenues in Philadelphia, PA. Brown was driving on Harbison Avenue going [n]orthbound. As [Brown] proceeded into the intersection of Harbison and Torresdale, the color of the traffic signal was yellow. Trinidad was driving his vehicle in the [s]outhbound direction of Harbison Avenue. [Trinidad] was in the left turn only lane and he began making a left turn onto Torresdale when he turned in front of [Brown]. [Trinidad's] vehicle struck the front of [Brown's] vehicle. At the time of the accident, [Brown] was bound by the limited tort provisions of the Motor Vehicle Financial Responsibility Law.

At trial, [Brown] presented the testimony of Brenda Washington, a crossing guard who was an eyewitness to this motor vehicle accident. [Brown] testified during his September 24, 2012 deposition that a crossing guard witnessed the accident. That crossing guard was later identified as Ms. Washington. She was not identified as a trial witness during discovery but she was identified on the Amended Settlement Conference/Pretrial Conference Memorandum filed by [Brown] on February 7, 2013. Ms. Washington was deposed prior to trial and [t]his [c]ourt permitted her to testify on June 3, 2013. Ms. Washington testified that she saw [Trinidad] get in the left lane on Harbison Avenue and attempt to make a left turn onto Torresdale Avenue when [Brown's] vehicle approached and the accident occurred.

During trial, [Brown] also presented testimony of his medical expert, Dr. Geoffrey Temple, who opined that [Brown] sustained an L5–S1 disc herniation as a result of the motor vehicle accident of November 3, 2011. Dr. Temple testified that [Brown] suffered a serious and significant injury which will have permanent effects on his life and may require more intensive treatment in the future, including injection therapy and surgery. [Brown] testified regarding the pain, symptoms, and resulting limitations he experiences as a result of the injuries he sustained in the motor vehicle accident of November 3, 2011. [Brown] treated with Dr. Holdgrafer, a chiropractor at Freedom Accident and Injury Center, from November 21, 2011 to March 20, 2012. [Trinidad] offered the testimony of his medical expert, Dr. Andrew Shaer. Dr. Shaer opined that the disc herniation at L5–S1 predated the accident and was a result of degenerative disc disease. Prior to trial, the [c]ourt precluded testimony from Dr. Shaer on the issue of Dr. Shaer performing film review work for [Brown's] counsel on other cases in the past.

The trial commenced on June 3, 2013 and concluded on June 4, 2013 when the [j]ury returned a verdict in favor of

* Retired Senior Judge assigned to the Superior Court.

[Brown], and against ... Trinidad. The [j]ury found that [Trinidad] was negligent and his negligence was a factual cause in bringing about [Brown's] harm. The [j]ury also found that [Brown] was not comparatively negligent and they proceeded to Question 6 on the verdict sheet that requested the [j]ury to find whether [Brown] sustained a serious impairment of bodily function, The [j]ury concluded that [Brown] did sustain a serious impairment of bodily function and awarded him damages in the amount of ... $85,000.

Trial Court Opinion, 5/9/14, at 2–3.

On December 27, 2013, the court added delay damages, for a total award of $85,287.10, and on December 30, 2013, it denied Trinidad's motion for a new trial.

This timely appeal followed, in which Trinidad raises the following issues for our review:

1. Whether ... Trinidad is entitled to judgment notwithstanding the verdict ("JNOV") or, in the alternative, a new trial because the jury's award was against the weight of the evidence, specifically because [Brown's] damages did not breach the limited tort threshold?

2. Whether [Trinidad] is entitled to a new trial because the [t]rial [c]ourt erred in precluding testimony from Dr. Shaer, the defense medical expert concerning film review work performed by Dr. Shaer on behalf of [Brown's] counsel?·

3. Whether [Trinidad] is entitled to a new trial because the [t]rial [c]ourt erred in precluding the cross-examination of Dr. Temple, [Brown's] medical expert who had done a records review only, stating that [Brown's] treating provider was a chiropractor and he could only give

an opinion to a reasonable degree of medical certainty?

4. Whether [Trinidad] is entitled to a new trial because the [t]rial [c]ourt erred in allowing the testimony of Brenda Washington after her identity was not revealed to [Trinidad] until four months after the discovery deadline and less than a month before trial?

Appellant's Brief, at 4.

▉▉▉▉ We begin by reviewing Trinidad's claim that the trial court erred by not entering judgment n.o.v. because the verdict was contrary to law and against the weight of the evidence.

Our standards of review for considering motions for JNOV and claims implicating the weight of the evidence are well-settled.

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every ⸯreasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the court could have properly made its award, then we must affirm the trial court's denial of the motion for

JNOV. A JNOV should be entered only in a clear case.

*Joseph v. Scranton Times, L.P.,* 89 A.3d 251, 260 (Pa.Super.2014) (citation omitted).

Appellate review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*In re Estate of Smaling,* 80 A.3d 485, 490 (Pa.Super.2013) (citing *Commonwealth v. Clay* [619 Pa. 423], 64 A.3d 1049, 1055 (Pa.2013)). "The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Samuel–Bassett v. Kia Motors Am., Inc.* [613 Pa. 371], 34 A.3d 1, 39 (Pa.2011). "The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will

only be granted where the facts and inferences of record disclose a palpable abuse of discretion." *Id.* (citing *Commonwealth v. Cousar* [593 Pa. 204], 928 A.2d 1025, 1035–36 (Pa.2007)). When a fact finder's verdict is "so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking." *Farelli v. Marko* [349 Pa.Super. 102], 502 A.2d 1293, 1295 (Pa.Super.1985) (quoting *Green v. Johnson* [424 Pa. 296], 227 A.2d 644, 645 (Pa.1967)).

*Haan v. Wells,* 103 A.3d 60, 69–70 (Pa.Super.2014).[1]

■ Trinidad's principal contention is that Brown, who elected the limited tort option, failed to establish that he sustained a serious injury. Section 1705(d) of the Motor Vehicle Financial Responsibility Law (MVFRL), provides, in relevant part, that "unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss." 75 Pa.C.S. § 1705(d) provide. The MVFRL defines serious injury as "a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. § 1702. With respect to this definition, the Pennsylvania Supreme Court has noted:

The "serious impairment of body function" threshold contains two inquiries:

---

1. We recognize the merit of the concurring opinion's position that an appellant should challenge the weight of the evidence in a motion for a new trial. Nevertheless, as a mid-level appellate court, we are bound by the decisions of our Supreme Court, including

*Samuel–Bassett, supra.* See *Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.,* 610 Pa. 371, 20 A.3d 468, 480 (2011) ("The intermediate appellate courts are duty-bound to effectuate this Court's decisional law").

a) What body function, if any, was impaired because of the injuries sustained in a motor vehicle accident?

b) Was the impairment of the body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment.... In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious.

*Washington v. Baxter*, 553 Pa. 434, 719 A.2d 733, 740 (1998) (quoting *DiFranco v. Pickard*, 427 Mich. 32, 398 N.W.2d 896, 901 (1986)). The determination whether a serious injury has been sustained "should be made by the jury in all but the clearest of cases." *Washington, id.*

 Geoffrey Temple, M.D., a board-certified family physician, testified as an expert witness for Brown. He concluded, to a reasonable degree of medical certainty, that Brown suffered a post-traumatic disc herniation, cervicalgia, thoracic pain, low back pain from the disc herniation, and myalgia as a result of the motor vehicle accident. Deposition of Geoffrey Temple, D.O., 4/12/13, at 30–31. He further testified that an MRI performed on December 23, 2011, revealed an L5–S1 herniation. *Id.* at 21. He explained that the L5–S1 disc no longer functions normally, which causes "quite a significant problem for a person such as Mr. Brown." *Id.* at 23. Dr. Temple further noted that Brown will "have varying degrees of symptoms into the indefinite future," *id.* at 28, and will require ongoing medical treatment including MRIs, consultations with a pain management specialist, injection therapy including epidural and facet block injections and, potentially, surgery. *Id.* at 29–30.

Brown, who is in his mid-twenties, testified to the subjective impact that his injuries have had on his life. Although he did not feel pain immediately after the accident, he developed lower back pain a few days later. N.T. Trial, 6/3/13, at 79. After the pain became more severe, he began treatment. *Id.* at 80. He stopped treating for the injuries in March 2012 because he was advised that his injuries could not be fixed, and physical therapy would only temporarily ease the pain, not take it away. *Id.* at 84. He continues to experience pain, numbness and tingling is his lower back. *Id.* at 93–94.

Brown returned to work after the accident, and on February 3, 2012, he sustained an injury at work. Dr. Temple testified that the November 3, 2011 motor vehicle accident made Brown more susceptible to the work injury he suffered three months later. Deposition of Geoffrey Temple, D.O., 4/12/13, at 39.

Brown testified that before the accident he enjoyed ice skating, bowling and playing basketball, but now is unable to run or jump. He can no longer play with his daughter as he did before the accident. N.T. Trial, 6/3/13, at 97–98.

Trinidad presented the testimony of Dr. Andrew Shaer, a board certified radiologist. Dr. Shaer reviewed Brown's MRI, and confirmed that Brown had a disc herniation at L5–S1. However, he opined that it was caused by preexisting, degenerative disc disease, and not by the November 3, 2011 motor vehicle accident. Deposition of Howard Shaer, M.D., 4/30/13, at 30.

 The jury accepted the testimony of Dr. Temple over that of Dr. Shaer. "It

is beyond argument that the fact-finder is free to accept or reject the credibility of both expert and lay witnesses, and to believe all, part or none of the evidence." *Casselli v. Powlen*, 937 A.2d 1137, 1139 (Pa.Super.2007) (citation omitted). Here, the evidence presented by Dr. Temple supported the jury's finding that Brown's injuries breached the limited tort threshold. Because the jury's verdict is not contrary to the evidence, and does not shock the conscience, the trial court properly denied Trinidad's requests for JNOV or a new trial. *See Haan, supra.*

█ Trinidad next asserts that the trial court erred by precluding him from eliciting testimony that his medical expert, Dr. Shaer, reviews diagnostic imaging for the law firm representing Brown.

At trial, Trinidad presented the videotaped deposition of Dr. Shaer. The jury heard the following exchange in which Dr. Shaer discusses his experience testifying as an expert witness:

Q: [You] are here serving as an expert witness for the defendants. Do you also review diagnostic imaging for plaintiffs in cases?

A: Yes, I do.

Q: And could you tell us—in the year 2013, could you break down, of the films that you have reviewed, what percentage would be for a defendant versus a plaintiff.

A: Sure. In 2013, the breakdown of defense versus plaintiff is about 80 percent defense, 20 percent plaintiff as it stands this year so far.

Deposition of Howard Shaer, M.D., 4/30/13, at 18.

The following testimony was stricken and not presented at trial:

Q: The attorney representing plaintiff Andrew Brown in this case is the firm Simon and Simon. Have your ever

read films for that particular law office before?

. . . . .

A: Yes, I have.

*Id.* at 18–19.

Trinidad argues that the trial court erred by excluding evidence that Brown's counsel has engaged the services of Dr. Shaer. We disagree. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. The trial court properly held that this evidence was irrelevant and was not probative of any facts at issue. Trial Court Opinion, 5/9/14, at 7. In addition, the court noted that this evidence "would suggest to the jury that Dr. Shaer's medical opinions are of heightened credibility because [Brown's] counsel has relied upon his medical expertise in the past. For these reasons, this testimony would unfairly prejudice Brown." *Id.* Even relevant evidence may be excluded where its probative value is outweighed by the danger of prejudice. Pa.R.E. 403.

We agree with Trinidad that evidence of a witness's lack of bias is relevant. *See* Appellee's Brief, at 8. That is why the trial court permitted the jury to hear that Dr. Shaer has reviewed diagnostic films for both plaintiffs and defendants. The trial court's ruling to strike Dr. Shaer's testimony that Brown's counsel engaged his services in the past was not erroneous and did not result in prejudice to Trinidad. *See Whitaker v. Frankford Hosp.*, 984 A.2d 512, 522 (Pa.Super.2009) (evidentiary rulings must be erroneous and prejudicial to complaining party to constitute reversible error). Accordingly, Trinidad is not entitled to a new trial.

█ Trinidad's next issue relates to the fact that after the motor vehicle acci-

dent, Brown was treated by a chiropractor, and not by a medical doctor. Trinidad argues that the trial court erred when it precluded him from asking Brown's medical expert, Dr. Temple, whether a chiropractor could only opine within a reasonable degree of chiropractic certainty.

During Dr. Temple's videotaped deposition, the following exchange took place between Trinidad's counsel and the doctor:

Q: Now, you mentioned a Doctor Holdgrafer. That's the physician that is at Freedom Accident and Injury Center?

A: Yes.

Q: And he is a chiropractor. Is that accurate?

A: Yes.

Q: And it would be fair to say, Doctor, that today you had told us several times you are testifying to a reasonable degree of medical certainty?

A: That is true.

Q: Would it be fair to say that a chiropractor can only offer opinions to a reasonable degree of chiropractic certainty?

. . . . .

A: You know, I'm not a chiropractor and I'm not an attorney. So, with regard to what a chiropractor can or cannot testify to, I'm not certain about that. I know what I can testify to.

Deposition of Geoffrey Temple, D.O., 4/12/13, at 44–45.

The trial court struck these deposition questions from the testimony presented at trial. Trinidad argues that he "was prejudiced by this determination because the jury was not made fully aware of [Brown's] treating provider's credentials, or lack thereof, on which Dr. Temple based his expert opinions." Appellant's Brief, at 24.

■■■■ "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Pa.R.E. 703. "A medical expert is allowed to express an opinion that is based, in part, on medical records [of another doctor, even if they] have not been admitted into evidence if those records are customarily relied upon by experts in his profession." *Cacurak v. St. Francis Med. Ctr.*, 832 A.2d 158, 171 (Pa.Super.2002) (citation omitted). So long as an expert utilizes his own expertise, judgment and training in forming his opinions, he may rely upon the records and reports of other medical providers. *Id.* Based on our review of Dr. Temple's deposition testimony, that is what happened in this case.

Furthermore, the trial court did not abuse its discretion in striking questions that asked a doctor to testify about the legal standard applicable to the expert testimony of another medical professional. Accordingly, Trinidad is not entitled to relief.

■■■■ Trinidad's final issue is that the trial court erred by allowing the testimony of crossing guard Brenda Washington, who was an eyewitness to the motor vehicle accident. He argues that Brown did not identify Washington in a timely manner, and accordingly, the court should have precluded her from testifying.

Pursuant to a revised case management order, discovery was to be completed by January 7, 2013. Although both parties knew that a crossing guard saw the accident, Brown did not identify and locate Washington until after the discovery deadline passed. However, he did include Washington on a witness list included in his amended settlement/pre-trial conference memorandum, which he served on Trinidad's counsel on February 7, 2013. Accordingly, almost four months before trial, Trinidad was aware of Washington's identity. Trinidad took Washington's de-

■■■■■■■■■■■

position on the morning of June 3, 2013, which was the first day of trial.

■■■ The testimony of a witness should not be precluded in the absence of prejudice. *See Feingold v. SEPTA,* 512 Pa. 567, 517 A.2d 1270 (1986); *Linker v. Churnetski Transportation, Inc.,* 360 Pa.Super. 366, 520 A.2d 502 (1987). Here, Brown identified Washington as a witness months before trial, and Trinidad had the opportunity to depose her. Although taking the deposition of a witness on the day of trial is unusual, we agree with the trial court that it nonetheless had the effect of making Trinidad aware of what Washington's trial testimony would be. Accordingly, Trinidad was not prejudiced, and we find no abuse of discretion on the part of the trial court in permitting Washington to testify at trial.

Judgment affirmed.

WECHT J., joins the opinion.

STRASSBURGER J., files a Concurring Opinion.

## CONCURRING OPINION BY STRASSBURGER, J.:

I join the Majority Opinion in its treatment of various issues regarding admission of evidence. Opinion at 771–74. I concur in the result regarding the Majority's discussion of the weight and sufficiency of the evidence. I write separately to address what, in my view, is an oft repeated misstatement of the law regarding post-trial motion practice.

In his motion for post-trial relief, Trinidad challenged the weight of the evidence presented at trial in both a motion for judgment notwithstanding the verdict (JNOV) and a motion for a new trial. In the civil context, the proper vehicle for presenting a weight-of-the-evidence claim is a motion for a new trial, not a motion for

JNOV. *See Morin v. Brassington,* 871 A.2d 844, 851 (Pa.Super.2005) ("Previously, in *Lanning v. West,* 803 A.2d 753 (Pa.Super.2002), we explained that the remedy of entry of judgment in a party's favor is proper only when a party successfully challenges the sufficiency of the evidence. On the other hand, the remedy of a new trial is proper when the verdict rendered by the trial court indicates that the trial court abused its discretion when weighing the evidence.") (citations omitted; emphasis in original).

I recognize that there is case law that suggests that weight-of-the-evidence claims can be brought *via* motions for a new trial and for JNOV. However, I do not believe these cases withstand scrutiny.

For instance, the Majority quotes this Court's recent decision in *Haan v. Wells,* 103 A.3d 60, 70 (Pa.Super.2014), in relevant part, as follows:

> The trial court may award a judgment notwithstanding the verdict or a new trial "only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." [*Samuel–Bassett v. Kia Motors Am., Inc.,* 613 Pa. 371, 34 A.3d 1, 39 (2011) ] (citing *Commonwealth v. Cousar,* 593 Pa. 204, 928 A.2d 1025, 1035–36 (2007)).

It is true that, in *Samuel–Bassett,* our Supreme Court stated, in language completely unnecessary to the result in that case, "Allegations that a motion for judgment notwithstanding the verdict or a new trial should have been granted because the verdict was against the weight of the evidence are addressed to the discretion of the trial court." *Samuel–Bassett,* 34 A.3d

at 39. However, in support of that proposition, the Supreme Court cited to *Commonwealth v. Cousar*, 593 Pa. 204, 928 A.2d 1025, 1035–36 (2007).

*Cousar* is a criminal case; thus, a motion for JNOV was not available to Cousar. Indeed, he challenged the weight of the evidence in a motion for a new trial.

To the extent that Trinidad intended to challenge the weight of the evidence in his motion for post-trial relief and to appeal the trial court's disposition of that challenge, for the reasons stated above, I conclude that his motion for JNOV failed as a matter of law. I further conclude that the trial court did not abuse its discretion by denying his motion for a new trial.