J-S48036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KENNETH J. HARCHICK AND JOYCE A. HARCHICK, HUSBAND AND WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| RYAN CAMPBELL | |
| Appellee | No. 271 WDA 2015 |

Appeal from the Judgment Entered on February 9, 2015
In the Court of Common Pleas of Clearfield County
Civil Division at No.: 2009-1997-CD

BEFORE: PANELLA, J., DONOHUE, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 15, 2015**

Kenneth Harchick (individually, "Harchick") and Joyce Harchick, husband and wife (collectively, "the Harchicks"), appeal the trial court's entry of judgment in favor of the defendant following a bench trial. We affirm.

In the underlying controversy, the Harchicks filed suit against Ryan Campbell, in which they alleged that Campbell erected a free-standing scaffold hunting stand on the Harchicks' property ("the Property") without permission and that Campbell had cut down 109 trees on their property to create a radial pattern of shooting lanes. Because the Harchicks challenge reduces to the claim that the trial court's improperly weighed the evidence in granting a defense verdict, we begin with our standard of review:

Appellate review of a weight [of the evidence] claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial court has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interests of justice.

The fact-finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial court's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. When a fact-finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.

***Brown v. Trinidad***, 111 A.3d 765, 770 (Pa. Super. 2015).

Although we are bound to review the evidence in the light most favorable to Campbell, doing so in this case would provide no meaningful account of the alleged facts underlying the Harchicks' claims, because, put simply, the trial court concluded that the determinative events alleged simply did not happen. Accordingly, we begin by reviewing the Harchicks' allegations as pleaded.

In the Harchicks' two-page complaint, they contended that they owned 150 acres in Burnside Township, Clearfield County, Pennsylvania (*i.e.*, the Property).  They averred that Campbell asked Harchick for permission to hunt on the Property.  Harchick denied Campbell permission to do so.  The Harchicks further alleged that, in late 2007, Campbell erected a hunting stand on the Property and cut down at least 109 trees to create shooting lanes.  The Harchicks alleged that Campbell cut down sixty-seven trees measuring one inch to one and one half inches in diameter, and forty-two trees measuring two to two and one half inches in diameter.  Based upon these allegations, the Harchicks asserted damages of $18,493.91, providing a nursery's replacement estimate for 109 trees.

After various delays and the eventual completion of discovery, the parties proceeded to a bench trial on August 15, 2014.  The Harchicks and three additional witnesses testified for the Harchicks.  Campbell testified and presented two additional witnesses on his own behalf.  Harchick testified[1] that, in November or December of 2007, Robert Neff, an individual who hunted in the area, told him that he had observed a hunting stand and cut trees on the Property.  Harchick visited the Property, observed a hunting stand just over the boundary separating the Property from a parcel

---

[1] **See** Notes of Testimony, 8/15/2014, at 46-89.

belonging to one Mr. McDermott ("the McDermott Property"),[2] and also saw freshly cut trees in what appeared to be a number of shooting lanes radiating out from the hunting stand. Approximately one week later, he returned to the Property and found Campbell, Campbell's son, and McDermott together, standing roughly on the property line dividing the Property from the McDermott Property. Harchick approached them and asked Campbell to identify himself. Harchick told Campbell that Campbell owed him money for the trees that had been cut down. Campbell asked how much money Harchick believed the trees to be worth, and Harchick indicated a value of $5,000. Campbell indicated that he would not remunerate Harchick in that or any amount.[3] The Harchicks introduced photographs depicting the stand and various freshly cut trees.

Harchick's wife testified briefly that she had never given Campbell permission to hunt on the Property. Notes of Testimony ("N.T."), 8/15/2014, at 80-82. Their son, Kenneth A. Harchick, testified that he had observed the cut trees after the fact, and that he did not know who had cut them, because he had not observed anyone doing so. *Id.* at 82-85. The Harchicks also called a certified forester to testify as an expert, and he

_____

[2] Mr. McDermott, who was deceased at the time of trial, is identified only as Mr. McDermott in the trial transcript.

[3] On this basis, Harchick understood Campbell to admit that he was responsible for cutting the trees.

testified regarding the trees that had been cut on the Property. *Id.* at 4-28. Additionally, they called the licensed owner of a nursery, who discussed the cost of replacing the trees. *Id.* at 29-35.

The defense began its presentation by calling Campbell to the stand. Campbell testified[4] that he regularly hunted in the vicinity of the Property. He further testified that he was aware of the location of the bounds of the Property. Campbell testified that he had one conversation with Harchick, approximately twenty years before the events at issue in this litigation, when Harchick observed Campbell and his brother on an adjacent parcel near the Property. Harchick approached the men and asked why they were hunting on the Property. Campbell responded that they were not within the bounds of the Property and were not hunting. Harchick requested, and was shown, Campbell's and/or his brother's hunting licenses, and he recorded identifying information.

Regarding the alleged 2007 encounter with Harchick, Campbell testified that, in the past, he had hunted on the McDermott Property, where he undisputedly had the encounter with Harchick, the substance of which the parties disputed. At that time, the hunting stand undisputedly was located on the McDermott Property. Campbell testified that he had never asked Harchick for permission to hunt on the Property, had never entered the

---

[4]     *See* N.T. at 87-106.

Property, had never hunted on the Property, had never erected a hunting stand on the Property, and had never cut trees on the Property. Campbell denied that he had admitted to cutting trees on the Property or discussed compensating the Harchicks for those trees. According to Campbell, Harchick asked him why Campbell was hunting "so close to" the Property. *Id.* at 93. Campbell responded that he was not hunting on the Property. Wishing to avoid conflict, Campbell exited the situation with his son in tow. He testified that he had no further contact with Harchick. Campbell also testified that he later moved his hunting stand from the McDermott Property to another acquaintance's property specifically to avoid further conflict with Harchick.[5]

Campbell also called Neff, the same gentleman who, Harchick testified, informed Harchick about the presence of the hunting stand and the cut trees on the Property. Neff averred[6] that he sometimes hunted with Campbell, and otherwise corroborated Campbell's testimony. Specifically, he testified

---

[5]     Campbell's desire to avoid conflict was a recurring theme in his testimony. Regarding his first encounter with Harchick, he testified that he and his brother were not on the Property. However, he and/or his brother, when approached by Harchick, produced their licenses when asked to do so. When counsel for the Harchicks asked why they would produce their licenses at Harchick's request when they were not trespassing, he quipped, "When you're standing there without a gun and someone has a high-powered rifle and you're in the woods you don't, you know—you just try to be courteous." N.T. at 105-06.

[6]     *See* N.T. at 107-17.

that he was familiar with the bounds of the Property, and that the hunting stand was situated on the McDermott Property. He testified that, during the relevant time period, Campbell never moved the hunting stand. He further testified that he had never hunted with Campbell on the Property, and that, although he was aware that Harchick claimed that certain trees on the Property had been cut down, he had never seen the trees and had no idea who might have cut them, if anyone.

Neff flatly denied the testimony of Harchick and his son that Neff had told them that he had helped Campbell remove a hunting stand from the Property to the McDermott Property. He did acknowledge encountering Harchick and his son posting notices where the Property abutted a road around when Harchick maintained that Neff had alerted him to the hunting stand on the Property, but indicated that the substance of the conversation concerned only a discussion of where one of the Property's boundaries was located. Neff acknowledged that the topic of a hunting stand had come up during that conversation. Specifically, Harchick asked him about the hunting stand and Neff responded that the hunting stand had never been on the Property.

Finally, Campbell called his brother, Raymond Campbell, to testify.[7] Raymond Campbell corroborated the other defense witnesses' testimony as

_____

[7] **See** N.T. at 118-21.

to the location of the hunting stand. He also corroborated Campbell's account of their encounter with Harchick decades before the events at issue. He further testified that he had never entered the Property and was unaware of any cut trees on the Property.

Following rebuttal testimony by Harchick and his son, the parties rested. The trial court accepted a trial memo from the Harchicks' and further granted the parties twenty days to prepare additional briefs for the trial court to review, should they so desire. The docket does not indicate that either party filed additional briefs to the trial court, although the trial court alluded to such briefs in its September 25, 2014 opinion and order. In that opinion, the trial court noted correctly that Harchick's claim that Campbell had directly or implicitly admitted that he had cut down the trees at issue, the core averment upon which the Harchicks' claims depended, was supported only by Harchick's own testimony. Conversely, Campbell's testimony and that of his other witnesses was consistent in contradicting the Harchicks' allegations. The trial court expressly found Campbell's testimony and that of his supporting witnesses "more weighty and credible than" Harchick's, and accordingly entered a defense verdict.

On October 6, 2014, the Harchicks filed a post-trial motion. After receiving briefs and hearing argument, the trial court denied the Harchicks' motion in an order entered on January 14, 2015. After judgment was entered on February 9, 2015, the Harchicks filed this timely appeal. The trial court entered an order directing the Harchicks to file a concise

statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), the Harchicks timely complied, and, on March 11, 2015, the trial court issued a supplementary Rule 1925(a) opinion, wherein the court reiterated that it had found Campbell and his witnesses more credible than the Harchicks.

As noted, *supra*, the Harchicks contest the trial court's weighing of the evidence. **See** Brief for the Harchicks at 4.[8] Their arguments in support of this claim consist of a lengthy recitation of the testimony reviewed above. In particular, the Harchicks dispute the trial court's assertion that the only evidence in support of their claim that Campbell admitted to cutting the trees was Harchick's testimony, but they do not direct this Court's attention to any other evidence that supported Harchick's account of the conversation.

Notably, the Harchicks do not acknowledge the highly deferent standard of review that we must apply to challenges to the fact-finder's weighing of the evidence, nor do they acknowledge that our carefully circumscribed responsibility in this case is merely to determine whether the trial court abused its discretion in rejecting their challenge to the weighing of the evidence:

> The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary

---

[8] The essence of their argument being so simply stated, it is unnecessary to quote at length the two issues into which the Harchicks formulate their claims.

to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial court's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. When a fact-finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.

*Brown*, 11 A.3d at 770.

The governing standard is easily applied in the instant case. The trial court correctly recognized the Harchicks' dependence upon Campbell's alleged admission to establish their entitlement to damages. However, Campbell flatly denied Harchick's account of the conversation during which Campbell was alleged to have made that admission. Thus, the trial court faced nothing more than a classic he said-he said dispute. Manifestly, the trial court was free, based upon the record before it, to find either party's testimony credible or incredible. The trial court explicitly found Campbell's testimony more credible, citing in support Campbell's corroborating witnesses, whose testimony the trial court also credited. This testimony was sufficient to support the trial court's findings of fact. Under these circumstances, the court clearly did not abuse its discretion in denying the Harchicks' challenge to the court's weighing of the evidence. Consequently, the Harchicks are entitled to no relief.

Judgment affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/15/2015