J-S61031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TOMORROW NEVER KNOWS, LLC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| STUART COHEN, | |
| Appellee | No. 950 EDA 2017 |

Appeal from the Judgment Entered May 19, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: 0331 June Term, 2015

BEFORE:  LAZARUS, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 28, 2017**

Appellant, Tomorrow Never Knows, LLC, appeals from the judgment entered by the trial court in favor of Appellee, Stuart Cohen, in this confession of judgment action.[1]  We affirm.

We take the following pertinent facts and procedural history from the trial court's April 13, 2017 opinion, and our independent review of the certified record.  On June 2, 2015, Appellant filed a complaint in confession of judgment

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant purports to appeal from the November 23, 2016 order announcing the decision of the trial court.  However, entry of final judgment was required to make this matter properly appealable.  **See** Pa.R.A.P. 301(a)(1).  On May 19, 2017, Appellant complied with this Court's order that it praecipe for judgment; therefore, we will treat the notice of appeal as timely filed on that date.  **See** Pa.R.A.P. 905(a)(5).

against Appellee; judgment was entered the same day. On July 23, 2015, Appellee filed a petition to open, which the court granted on September 30, 2015, after a hearing. The case proceeded to a bench trial on November 8, 2016. At trial, the following facts were presented.

Scott Becker is the sole member and manager of Appellant, and has been a friend of Appellee for approximately twenty-five years. (*See* N.T. Trial, 11/08/16, at 21-23, 118). Appellee worked as a real estate agent, and for a number of years, as a real estate investor. (*See id.* at 117). As an agent, he assisted Mr. Becker with the purchase of approximately 180 investment properties. Mr. Becker practiced real estate investment for seventeen years before "[he] decided to sell out and [] use[] the . . . proceeds . . . for hard money lending."[2] (*Id.* at 22).

Between June 11, 2009 and October 18, 2012, Appellant made nine loans to Appellee, totaling $825,000.00. (*See* Joint Stipulation of Facts, 11/08/16, at unnumbered pages 1-2). The loans were secured by mortgages on eight properties. When Appellee could no longer service the loans, he authorized Appellant to collect the rent on the properties occupied by tenants. (*See* N.T. Trial, at 28).

---

[2] Mr. Becker described "hard money lending" as "[b]asically lend[ing] money to individuals or companies to do real estate projects. Typically, like a year loan, interest only." (N.T. Trial, at 21).

- 2 -

In August of 2013, Appellee telephoned Mr. Becker to attempt to discern a way to decrease his loan payments, including the idea of deeds in lieu of foreclosure. (*See id.* at 121). On August 30, 2013, Mr. Becker sent Appellee an email titled, "Deficiency." (*See id.* at 26; Trial Exhibit P-19, Email from Appellant to Appellee, August 30, 2013). The letter attached to the email stated that Appellee was planning on providing deeds in lieu of foreclosure, that Mr. Becker did not know the properties' value, and that upon sale of the properties, a deficiency on the amount due to Appellant may still exist and it was not waiving its right to collect any such deficiency. (*See* Trial Exhibit P-19, at attached letter). Appellee acknowledged receipt of the email and attachment the same day. (*See* N.T. Trial, at 123). Mr. Becker instructed Appellant's attorney, Richard Gallucci, Esquire, to prepare deeds in lieu of foreclosure and directed that they were not to waive Appellant's right to pursue deficiency judgments. (*See id.* at 38-39, 84-85). David Giles, Esquire, an attorney in the same law firm as Mr. Gallucci, prepared the deeds. (*See id.* at 84).

Approximately two months later, on November 11, 2013, Appellant sold six of the properties to Larase Management, LLC, a buyer that Mr. Becker found for the transaction. (*See id.* at 34-35). Larase Management paid a total of $550,000.00. (*See id.* at 34). After the sale, Appellee received a credit against the amounts he owed to Appellant, secured by the Larase properties. (*See id.* at 34-35). When Larase Management defaulted on the

loans, it executed deeds in lieu of foreclosure and conveyed the properties to Appellant. (*See id.* at 37-38).

On December 2, 2014, at Mr. Becker's request, Appellee executed deed[s] in lieu of foreclosure to Appellant for the two remaining properties (the Arlington Properties) he had mortgaged. (*See id.* at 38-39). Neither Mr. Becker nor Appellee had any prior experience with deeds in lieu of foreclosure before the Larase and Arlington transactions. (*See id.* at 61, 120). The deeds contained language that specifically stated their execution would not be deemed to satisfy any portion of the debt secured by the mortgages on the properties. (*See id.* at 38-39). However, Appellee testified that, based on his discussions with Mr. Becker, he understood that Appellant would not file for a deficiency judgment, in exchange for him signing the deeds in lieu of foreclosure. (*See id.* at 125). He stated, "I would have never signed the documents if, in fact, [Mr. Becker] didn't tell me that it was done or I didn't have verification from [him]. Otherwise, why would I have done it? I would have just kept collecting the rents." (*Id.* at 125-26). Conversely, Mr. Becker testified that there was no such agreement. (*See id.* at 42, 69). The trial court found that Mr. Becker's testimony on this point was not credible. (*See* Trial Court Opinion, 4/13/17, at 4).

In December 2014, Mr. Becker asked Appellee to sign estoppel affidavits the title insurance company required before it would issue title insurance to Appellant for the subject properties. (*See* N.T. Trial, at 39-40, 87-88).

Attorney Giles reviewed the affidavits prepared by Attorney Gallucci. He advised Mr. Becker to talk with Appellee and agree to a fair market value credit Appellee would receive for each property, and set forth such amounts in the affidavits. Mr. Becker declined to do so. The trial court observed:

> While Mr. Becker testified he did not know what [Appellee's] reaction would have been if he would have had a frank discussion with him as his lawyer suggested, Mr. Becker's testimony on this point was not credible. Despite his lawyer's advice, Mr. Becker did not have a frank discussion with [Appellee] because he knew it was contrary to [Appellee]'s understanding of their agreement and [Appellee] would stop cooperating in the process of getting the properties back to [Appellant] with insurable title.

(Trial Ct. Op., at 6) (record citations omitted).

On December 19, 2014, Appellee met with Mr. Gallucci to execute the estoppel affidavits. (*See* N.T. Trial, at 90). Paragraph 5 of the affidavits provided that he would be given a credit against the notes and mortgages secured by the properties being conveyed by the deeds in lieu of foreclosure, but also that they would not be satisfied in full by the delivery of the deeds. (*See* Exhibit P-13, Estoppel Affidavit, at unnumbered page 2 ¶ 5). Appellee testified that, upon reviewing paragraph 5, he paused and asked Mr. Gallucci, whether he signed the affidavits, would that mean he "was done . . . it was over[,]" to which Mr. Gallucci responded "[he]'d be done." (N.T. Trial, at 125; *see id.* at 131).

On November 23, 2016, the trial court entered an order that set forth its findings of fact and conclusions of law, vacated the confession of judgment filed on June 2, 2015, and found in favor of Appellee and against Appellant.

The [c]ourt determined the burden was on [Appellee] to establish he and Mr. Becker had agreed to not proceed on the deficiency judgment(s) even though Mr. Becker had reserved the right to do so. The [c]ourt concluded [Appellee] had met that burden because the [c]ourt found his testimony more credible than Mr. Becker's regarding waiving any deficiency judgment in exchange for providing deeds in lieu of foreclosure. Mr. Becker's denial of the fact that [Appellee] would not have transferred the properties as he did if Mr. Becker was going to proceed for a deficiency judgment anyway was not credible.

(Trial Ct. Op., at 6) (record citations omitted); (**see also id.** at 5) (finding Appellee "testified credibly that he would never have signed the deeds in lieu of foreclosure/estoppel affidavits in the absence of his conversations with Mr. Becker and Mr. Gallucci's reassurances he would be done with the entire process.") (record citation omitted). Further, the court found Mr. Gallucci's testimony that he mentioned the foreclosure, but said nothing about the deficiency judgment, to be credible. (**See id.** at 5).

On February 13, 2017, the trial court denied Appellant's post-trial motions. Appellant timely appealed. On April 5, 2017, Appellant filed a timely statement of errors complained of on appeal, pursuant to the trial court's order. **See** Pa.R.A.P. 1925(b). The court filed an opinion on April 13, 2017. **See** Pa.R.A.P. 1925(a).

Appellant raises two questions for our review.

1. Whether the trial court's decision following trial and the trial court's subsequent denial of [Appellant's] motion for post-trial relief were against the weight of the evidence and errors of law?

2. Whether the trial court erred in finding that [Appellant]'s attorney has sufficient authority to agree to release [Appellee] for liability for a deficiency judgment[?]

- 6 -

(Appellant's Brief, at 2) (unnecessary capitalization omitted).

In its first issue, Appellant maintains that the trial court's finding that it agreed to waive the deficiency was against the weight of the evidence. (*See id.* at 9, 11-13). This issue is waived and would lack merit.

As a preliminary matter, we observe that Appellant failed to provide any legal citation, or discussion thereof, in support of his weight of the evidence challenge, in violation of Pennsylvania Rules of Appellate Procedure 2119(a), (b). (*See id.*); Pa.R.A.P. 2119(a), (b) (requiring an appellant to provide pertinent citation to legal authority and discussion thereof). In fact, it does not cite a single cogent authority in support of its first issue. Additionally, it fails to provide the standard of review for a weight of the evidence claim. (*See* Appellant's Brief, at 2, 9, 11-13); Pa.R.A.P. 2111(a)(3). Therefore, Appellant's first claim is waived. *See Rettger v. UPMC Shadyside*, 991 A.2d 915, 932 (Pa. Super. 2010), *appeal denied*, 15 A.3d 491 (Pa. 2011) (finding issue waived for appellant's failure to provide standard of review or cite any law in support of issue); Pa.R.A.P. 2101.

Moreover, even had Appellant properly argued this issue, it would not merit relief. Our standard of review for a challenge to a trial court's finding regarding weight of the evidence is well-settled.

> Appellate review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest

consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court may award . . . a new trial only when the [] verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. When a fact finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.

*Brown v. Trinidad*, 111 A.3d 765, 770 (Pa. Super. 2015) (citations and internal quotation marks omitted).

Instantly, the trial court found:

[O]n the question of whether there was an agreement to waive any deficiency, the [c]ourt found [Appellee's] testimony was credible and Mr. Becker's testimony was not credible. Factoring into this determination included that Mr. Becker blatantly disregarded his attorney's advice to come to an agreement with [Appellee] as to fair market value he would be credited with for each property and set forth such amounts in the affidavits, which would have established any deficiency. The [c]ourt firmly believes Mr. Becker chose not to have such discussions with [Appellee], because it would have tipped [him] off that [Appellant] was indeed going to pursue a deficiency judgment in spite of their conversations to the contrary.

The [c]ourt does not dispute that [Appellee] signed legal documents that would allow for [Appellant] to pursue a deficiency judgment, and understands [Appellant's] counsel's conviction that

- 8 -

great weight should be placed on these documents. The [c]ourt, however, was also understanding that, while inadvisable, a layman under financial pressure such as [Appellee] would rely on his conversations and twenty-five[-]year friendship with Mr. Becker and sign documents with legalese that was contrary to their agreement.

(Trial Ct. Op., at 11).

Based on the foregoing, and our independent review of the entire record, which contains Appellee's repeated insistence that he would not have signed Mr. Becker's documents if he knew Appellant's intent was to seek deficiency judgments, we cannot conclude that the "verdict is so opposed to the demonstrative facts that looking at [it], the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion[.]" **Brown**, **supra** 770 (citation and internal quotation marks omitted). Although Appellant would have us re-weigh the evidence in its favor, our standard of review precludes us from doing so. **See id.**[3] Appellant's first issue, even if not waived, would not merit relief.

In its second claim, Appellant maintains that "the trial court erred in finding [its] counsel[, Mr. Gallucci,] had authority to release [Appellee] from liability for a deficiency judgment." (Appellant's Brief, at 16) (unnecessary

---

[3] Appellant also raises, for the first time, arguments about the legal theories of accord and satisfaction and novation. (**See** Appellant's Brief, at 13-16). These theories were not issues in the case, Appellant did not argue about them, and the court did not mention, let alone make any finding on them. Therefore, we will not consider them in this appeal. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

capitalization and emphasis omitted). This claim has no merit because the trial court did not find that Mr. Gallucci released Appellee from liability for the deficiency judgment.

It is well-settled that our standard of review of a bench trial consists of:

> a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

*Gutteridge v. J3 Energy Group, Inc.*, 165 A.3d 908, 914 (Pa. Super. 2017) (citation omitted). Further, "this Court has stated that we will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." *Id.* (citation and internal quotation marks omitted).

Here, as to Mr. Gallucci, the trial court stated that

> [its] findings of fact and conclusions of law did not infer or find he had the authority to waive a deficiency judgment. Rather, the findings of fact specifically stated the court believed it might be true Mr. Gal[l]ucci said nothing to [Appellee] either way about a deficiency judgment. The court, however, did find that Mr. Gal[l]ucci confirmed he told [Appellee] **the foreclosure** would stop and the fees would stop, and that [Appellee] testified credibly he would never have signed the deeds in lieu of foreclosure/estoppel affidavits but for his conversations with Mr. Becker and Mr. Gal[l]ucci's reassurances. Accordingly, **there was no finding or inference that Mr. Gallucci had the authority**

- 10 -

**to waive a deficiency judgment** and [Appellant's] complaint thereto is without merit.

(Trial Ct. Op., at 9-10) (record citations and some capitalization omitted; emphases added).

Our independent review confirms the trial court's statement. In fact, the court expressly found that it believed Mr. Gallucci's testimony that he only mentioned the foreclosure action to Appellee. Although the court found Appellee credibly testified that he based his decision to sign the documents on conversations he had with Mr. Becker and Mr. Gallucci, there is no reasonable way, in the totality of the court's findings, it can be inferred that the court found Mr. Gallucci had authority to waive Appellant's right to pursue a deficiency judgment. Therefore, the trial court did not abuse its discretion or commit an error of law in rendering its verdict. ***See Gutteridge***, ***supra*** at 914. Appellant's second issue lacks merit.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/28/2017</u>