**Vincenza CANGEMI, Executrix of the Estate of Michael S. Cangemi, Deceased and Vincenza Cangemi, In her own Right, Appellants,**

v.

**Michael CONE, D.O., Alfonse A. Emmolo, M.D., and Northwest Medical Center, Appellees.**

**No. 589 WDA 2000.**

Superior Court of Pennsylvania.

Argued Oct. 25, 2000.
Filed April 24, 2001.
Reargument Denied June 28, 2001.

Before KELLY, ORIE MELVIN and LALLY–GREEN, JJ.

ORIE MELVIN, J.:

¶ 1 In this medical malpractice action, Appellant Vincenza Cangemi originally sought to recover wrongful death and survival damages from Appellees Alfonso A. Emmolo, M.D., Michael Cone, D.O. and Northwest Medical Center on a theory of failure to diagnose an abdominal aneurysm. Prior to trial, Dr. Cone and the Northwest Medical Center were dismissed from the case on summary judgment.[1] A jury trial against the remaining physician resulted in a verdict for the defense. In special interrogatories, the jury found Dr. Emmolo was negligent but determined his negligence was not a substantial factor in causing Mr. Cangemi's death, resulting in a defense verdict. Post-trial motions were denied by the trial court. Appellant appeals both the grant of summary judgment in favor of Northwest Medical Center and the judgment entered following the denial of post-trial motions. For the following reasons, we reverse and remand for a new trial as to both Dr. Emmolo and Northwest.

¶ 2 According to the testimony at trial, Michael Cangemi appeared at the Northwest Medical Center Emergency Room on September 27, 1992 complaining of abdominal bloating, discomfort, weakness and vomiting. He was examined by Dr. Davidson, the emergency room doctor. Dr. Davidson ordered an abdominal x-ray and a chest x-ray. At that time, Mr. Cangemi was admitted to the hospital under the service of Dr. Emmolo, his family physician, who was also on staff at the hospital. It is undisputed that the x-ray disclosed the presence of an abdominal aortic aneurysm. However, according to Dr. Emmolo, he never received a copy of the x-ray or the x-ray report. Unfortunately, Mr. Cangemi was released from the hospital, and the aneurysm was not diagnosed at that time by Dr. Emmolo as the source of Mr. Cangemi's internal bleeding. Over the next two months there was continued treatment by Dr. Emmolo for what Dr. Emmolo suspected to be anemia and gastrointestinal bleeding due to diverticulosis. Finally, on November 19, 1992, Mr. Cangemi again went to the emergency room. He was seen by Dr. Cone. Again, the source of his internal bleeding was undiag-

---

1. Appellants did not contest the Motion for Summary Judgment by Defendant Dr. Cone, nor is the Order granting it in favor of Dr. Cone the subject of this appeal.

nosed, and he was sent home. By the time he returned hours later the aneurysm had burst, and Mr. Cangemi was flown to a Pittsburgh hospital for emergency surgery. Although the surgery was a success, Mr. Cangemi died later that same day from shock and kidney failure associated with tremendous blood loss.

¶ 3 The first issue we will address is whether the jury verdict is against the weight of the evidence. We note the standard of review of the denial of a motion for a new trial is not different than the grant of a new trial. *Livelsberger v. Kreider*, 743 A.2d 494 (Pa.Super.1999).

Our standard of review in denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion. *Randt v. Abex Corporation*, 448 Pa.Super. 224, 671 A.2d 228, 232 (1996). A new trial will be granted on the grounds that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice. *Watson v. American Home Assurance Company*, 454 Pa.Super. 293, 685 A.2d 194, 198 (1996) *appeal denied*, 549 Pa. 704, 700 A.2d 443 (1997). An appellant is not entitled to a new trial where the evidence is conflicting and the finder of fact could have decided either way. *Id.*

*Kruczkowska v. Winter*, 764 A.2d 627, 629 (Pa.Super.2000).

¶ 4 Appellant claims the jury verdict is against the weight of the evidence so as to warrant a new trial where the jury found Dr. Emmolo negligent but also found his negligence was not a substantial factor in the death of Mr. Cangemi. Appellant complains the verdict is contrary to the evidence in that the appellant's expert Dr. Gramlich established causation which was uncontested by appellees.

¶ 5 At trial, Dr. Gramlich testified that had Dr. Emmolo looked at the x-ray and the x-ray report from September 27th, he would have seen the aneurysm and timely diagnosed it before it ruptured. She opined that at the time the x-ray was taken in September of 1992 there was a high probability that surgery would have been successful. In her opinion, Mr. Cangemi's chance for survival became highly improbable with the delay of surgery until after the aneurysm ruptured. Dr. Gramlich testified "with elective surgery, he had a very high probability of a good outcome and once ruptured, the probability of a good outcome is significantly lower. In fact, I don't ever remember sending a patient to the O.R. with a ruptured aneurysm who survived." N.T., 1/19/99, at 207.

¶ 6 We are mindful of the fact that where evidence has been presented establishing conduct by a physician which increased a risk of a specific harm to the patient and evidence that the specific harm did in fact occur, causation must still be proven. *See Mitzelfelt v. Kamrin*, 526 Pa. 54, 584 A.2d 888 (1990) (holding a jury must find the increased risk to be a substantial factor in the resultant harm before liability attaches.) However, in the present case, causation was not contested. We conclude that the jury's determination that Dr. Emmolo's negligence was not a substantial factor bears no rational relationship to the evidence adduced at trial. Appellee's experts did not contest that had Dr. Emmolo been aware of the results of the x-ray and the x-ray report, a diagnosis of the abdominal aneurysm would have been made. While we note the trial court's contention that the verdict could have been a result of the jury's finding Dr. Emmolo was negligent in his treatment unrelated to the failure to diagnose claim, such speculation does not alleviate the er-

roneous nature of the jury's conclusion that Dr. Emmolo's negligence was not a substantial factor in bringing about Appellant's harm, especially since no defense experts contradicted plaintiff's expert opinion that timely diagnosis and surgery would have in all likelihood saved Mr. Cangemi's life. Accordingly, we are constrained to find that the trial court abused its discretion in denying Appellant a new trial in this regard.[2]

¶ 7 Next we turn to the issue of whether the trial court erred in granting summary judgment in favor of Northwest Medical Center. Our scope of review is plenary when reviewing the propriety of a trial court's entry of summary judgment. *Billman v. Saylor*, 761 A.2d 1208 (Pa.Super.2000)(citing *Schriver v. Mazziotti*, 432 Pa.Super. 276, 638 A.2d 224 (1994)). Pursuant to Pennsylvania Rule of Civil Procedure 1035.2, summary judgment shall be rendered whenever (1) there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, or (2) the adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action. *Id.* **We must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party when determining if there is a genuine issue of material fact.** *Id.*

¶ 8 Appellant sought to include Northwest in this case under a theory of corporate negligence. Generally, a claim of corporate negligence requires that in cases where a hospital's negligence is not obvious, plaintiff must establish through expert testimony that a hospital's acts deviated from an accepted standard of care

and that the deviation was a substantial factor in causing plaintiff's harm. *Matthews v. Clarion Hospital*, 742 A.2d 1111 (Pa.Super.1999) (citing *Welsh v. Bulger*, 548 Pa. 504, 698 A.2d 581, 585 (1997)). However, expert testimony is not required "where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of even nonprofessional persons." *Welsh*, 548 Pa. at 514 n. 11, 698 A.2d at 586 n. 11.

¶ 9 In the present case, the trial court found that "the duty to formulate and adopt adequate rules and policies surrounding the delivery of x-rays and radiologist's reports are not beyond that of the average lay person." Trial Court Opinion, 1/15/99, at 3. We agree. Yet, the trial court faults the Appellant because her expert does not allege any negligence of the hospital in failing to make these x-ray results available in a manner other than their standard procedure, implying an expert opinion is necessary. We conclude expert testimony is not necessary in this case because the issue is simple and the want of care is so obvious; when the hospital's radiologist has a report that suggests Mr. Cangemi has an abdominal aneurysm and the attending physician does not get the report, it is either because of the negligence of the hospital or the negligence of the physician. Appellant's expert opined that had Dr. Emmolo received this report, he would have made a proper timely diagnosis and realized Mr. Cangemi was suffering from a leaking aneurysm. By alleging that he never received the report, Dr. Emmolo in effect is pointing the finger at the hospital for failing to make the report available. Accordingly, it is a factual dis-

---

**2.** Because we reverse and remand on this basis, we will not address Appellant's remaining claims of trial error concerning judgment

not withstanding the verdict and the jury instruction.

pute appropriately left for the jury to resolve. The Appellant's expert established a causal connection between the missing report and the failure to diagnose. The question left for the jury should have been whether Dr. Emmolo did not get the report because of the hospital's negligence in failing to follow its polices and procedures or whether it was his fault he did not get the report due to his own negligence in not seeking it out.

¶ 10 Order granting summary judgment and order denying post-trial motions reversed. Case remanded for a new trial. Jurisdiction relinquished.

¶ 11 LALLY–GREEN, J., concurs in the result.