J-A11012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JEREMIAH BROWN & JENNIFER BROWN, INDIVIDUALLY AND AS ADMINISTRATORS OF THE ESTATE OF D.B. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : | No. 1298 MDA 2018 |
| BRANDON SMITH, M.D. AND HERSHEY MEDICAL CENTER, AND ADAM SIGAL, M.D. AND READING HOSPITAL | : : : : | |

Appeal from the Judgment Entered July 16, 2018
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2015 CV 4032

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                **FILED SEPTEMBER 10, 2019**

Jeremiah Brown and Jennifer Brown, individually and as Administrators of the Estate of D.B. ("Administrators"), appeal from the July 16, 2018 judgment entered in favor of Reading Hospital in this medical malpractice action.[1]  The jury found that Brandon Smith, M.D., a pediatric hospitalist at Hershey Medical Center ("HMC"), was solely liable for the injury to and death of D.B.  After thorough review, we affirm.

The facts giving rise to the action were summarized by the trial court as follows:

---

[1]  Hershey Medical Center and Dr. Smith are not participating in the instant appeal.

In the fall of 2012, D.B., a six[-]year[-]old child, developed symptoms of repeat infections, fevers, increased urination, vomiting and excessive thirst. Initially, D.B.'s mother, was instructed by her pediatrician, Dr. Timothy Tam, to limit D.B.'s fluid intake. However, this caused D.B.'s condition to deteriorate. Jennifer Brown thereafter took her daughter to Reading Hospital's Emergency Room Department on December 10, 2012, where D.B. was examined and evaluated by Dr. Adam Sigal.

Following Dr. Sigal's physical examination, laboratory studies were ordered, including a complete blood count and chemistry. A urinalysis was also ordered. Many of the laboratory results were abnormal, and one revealed a blast cell count of 25, which is highly abnormal and indicates a possibility of Leukemia. This blast cell count was flagged by the laboratory in accordance with Reading Hospital's critical value report form policy and reported to an ER nurse. However, the policy broke down in that there was evidence that [Katharine Einsel,] the ER nurse who was advised of the lab results[,] never reported to Dr. Sigal that there was a critical lab result.

Unaware of the critical findings, Dr. Sigal recommended that D.B. be transferred to Hershey Medical Center ("HMC") because she had some abnormalities in her electrolytes and other labs that Reading Hospital was not equipped to handle. Dr. Sigal diagnosed D.B. with Diabetes Insipidus, and recommended that she be transferred to HMC for evaluation and treatment by a Pediatric Endocrinologist. Upon receipt of D.B. from Reading Hospital, no one from HMC reviewed D.B.'s entire chart and took note of the critical lab results, including her receiving doctor, Dr. Brandon Smith. As a result, D.B. was diagnosed with Diabetes Insipidus at HMC and treated successfully for same. She was discharged from HMC on December 12, 2012.

. . .

Ultimately, in May of 2013, D.B.'s condition worsened to the point that she could barely walk and was experiencing pain in her legs and back. D.B. was again seen and evaluated at Reading Hospital's Emergency Room. A repeat CBC was ordered, which revealed an elevated blast cell count, which was recognized by medical personnel. D.B. was admitted to HMC on May 27, 2013[,] and was diagnosed with Acute Myeloid Leukemia.

D.B. underwent several rounds of chemotherapy and a stem cell infusion, but her prognosis was eventually determined to be terminal. D.B. ultimately died from Acute Myeloid Leukemia ["AML"] on Christmas morning in 2013 when she was only eight years old.

Trial Court Opinion, 7/2/18, at 1-2.

Administrators filed this wrongful death and survival action alleging negligence against Reading Hospital for the conduct of its nurses and Dr. Sigal, and against Dr. Sigal, individually. In addition, they pled negligence against HMC, Dr. Smith, and other named physicians at HMC.[2] Reading Hospital filed cross-claims against HMC and Dr. Smith; HMC filed cross-claims against Reading Hospital sounding in both corporate negligence and vicarious liability for the negligence of its agents and employees. Administrators settled with HMC and Brandon Smith, M.D., but those parties actively defended themselves at trial against the cross-claims filed by Reading Hospital and prosecuted their cross-claims against Reading Hospital and Dr. Sigal. After a two-week jury trial, the jury found that Dr. Smith, the Reading Hospital nurses, and Reading Hospital were negligent. The jury concluded, however, that Dr. Smith's negligence was the sole factual cause of harm to D.B., and assigned to him one hundred percent of the liability.[3]

---

[2] Timothy Tam, M.D, and his pediatric group were joined as additional defendants in the lawsuit. Those claims were settled prior to trial and the additional defendants did not participate.

[3] The jury found that Dr. Sigal was not negligent.

Administrators filed a motion for post-trial relief seeking judgment n.o.v., or, in the alternative, a new trial. They alleged that it was an error of law to find Dr. Smith one hundred percent liable, and that the verdict was against the weight of the evidence.[4] The trial court denied both judgment n.o.v. and a new trial, and judgment was entered on the verdict. Administrators timely appealed and complied with Pa.R.A.P. 1925(b). They present four issues for our review:

A. Whether the Trial Court erred and abused its discretion by denying [Administrators'] Post-Trial Motion for Relief regarding the jury's finding of no causal link between Reading Hospital's corporate negligence and injury to D.B., as this finding was against the weight of the evidence?

B. Whether the Trial Court abused its discretion by denying [Administrators'] Post-Trial Motion for Relief regarding the jury's finding of no causal link between Nurse Risko's negligence and injury to D.B, as this finding was against the weight of the evidence?

C. Whether the Trial Court erred and abused its discretion by denying [Administrators'] Post-Trial Motion for Relief regarding the jury's finding of no causal link between Nurse Einsel's negligence and injury to D.B., as this finding was against the weight of the evidence?

_____

[4] Appellees Reading Hospital and Adam Sigal, M.D. urge us to find Administrators' weight of the evidence claims waived for failure to assert them in the motion for post-trial relief. The trial court rejected that argument below. *See* Trial Court Opinion, 7/2/18, at 3 (summarizing Administrators' argument that it was an "error of law for the jury to find causation as to Dr. Smith, but no causation as to Reading Hospital, or, alternatively, that the verdict was against the weight of the evidence"). After reviewing Administrators' motion for post-trial relief and brief in support thereof, we find that the weight of the evidence issues on appeal were preserved therein. Hence, we find no waiver.

D. Whether the Trial Court erred and abused its discretion when it opined that the jury did not find Reading Hospital or the [n]urses of Reading Hospital caused injury to D.B. based on the factual causation standard and not because of a superseding, intervening cause of injury?

Appellants' brief at 10-11.

Administrators allege that the trial court erred in refusing to modify the jury verdict to hold Reading Hospital both corporately negligent and vicariously liable for the negligence of its nurses. In essence, they contend that the verdict was contrary to law and the weight of the evidence, and that they were entitled to judgment n.o.v., and a new trial to apportion liability.

Our standard of review from the denial judgment n.o.v. is well settled:

> When reviewing an appeal from the denial of a request for JNOV, the appellate court must view the evidence in the light most favorable to the verdict-winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. . . . Thus, the grant of a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict-winner. Furthermore, [i]t is only when either the movant is entitled to judgment as a matter of law or the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant that an appellate court may vacate a jury's finding.

*Phillips v. Lock*, 86 A.3d 906, 919 (Pa.Super. 2014) (quoting *Empire Trucking Co. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 932 (Pa.Super. 2013)) (citations and quotation marks omitted).

In reviewing the trial court's denial of a motion for new trial, we must "decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion." *Stapas v. Giant*

*Eagle, Inc.*, 153 A.3d 353, 359 (Pa.Super. 2016) (quoting *Cangemi ex rel.*

*Estate of Cangemi v. Cone*, 774 A.2d 1262, 1265 (Pa.Super. 2001)). It is

well established in Pennsylvania that trial courts have broad discretion to grant

or deny a new trial. *Flenke v. Huntington*, 111 A.3d 1197, 1199 (Pa.Super.

2015).

> [A]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Phillips*, *supra* at 919 (internal quotation marks and citation omitted). "[I]f

there is any support in the record for the trial court's decision to deny the

appellant's motion for a new trial based on weight of the evidence, then we

must affirm. An appellant is not entitled to a new trial where the evidence

presented was conflicting and the fact-finder could have decided in favor of

either party." *Corvin v. Tihansky*, 184 A.3d 986, 992-993 (Pa.Super. 2018)

(quoting *Winschel v. Jain*, 925 A.2d 782, 788 (Pa.Super. 2007)).

Administrators contend first that the trial court abused its discretion by

failing to address their claim that the jury's finding that Reading Hospital's

corporate negligence was not a factual cause of injury was against the weight

of the evidence. Administrators highlight evidence that Reading Hospital's

failure to enforce its corporate policy requiring that critical lab values be written down on a specific form, orally repeated back to the caller, and then communicated to the attending physician, caused harm to D.B. They argue that, had the policy been enforced and complied with, "then the attending physicians would have been verbally notified of the blast cells and the correct treatment plan would have been timely implemented." *Id*. at 28. Administrators contend that "[t]he evidence at trial also indisputably revealed that the Reading Hospital's corporate negligence was a factual cause of the harm suffered by D.B." *Id*.

Administrators did not plead a corporate negligence claim against Reading Hospital or assert facts giving rise to such liability. Moreover, the trial court denied Administrators leave to amend their complaint a fourth time to assert a corporate negligence claim as the statute of limitations had run. HMC filed a cross-claim injecting Reading Hospital's corporate negligence into the lawsuit.[5] Counsel for HMC and Reading Hospital, as well as the trial court, informed the jury that HMC was asserting the corporate negligence claim against Reading Hospital, not Administrators. Given the posture of the case,

_____

[5] The trial court found that the cross-claim was timely filed, and permitted it although it alleged a different cause of action from the original complaint. *See* Pa.R.C.P. 1031.1(2). HMC maintained that the cross-claim was merely a vehicle to permit it to introduce evidence of corporate negligence against Reading Hospital for purposes of apportioning liability, and conceded that it was not entitled to contribution or indemnity. Administrators did not challenge the propriety of the cross-claim post-trial or on appeal.

we do not see how a jury finding in favor of HMC on its corporate negligence cross-claim against Reading Hospital would have resulted in any recovery for Administrators, and Administrators have not enlightened us. Consequently, we discern no harm to Administrators from the trial court's denial of post-trial relief on this ground. In short, Administrators should not be heard to complain that the trial court abused its discretion in denying them judgment n.o.v. or a new trial on a claim they did not plead and upon which they could not recover. **See Harman ex rel. Harman v. Borah**, 756 A.2d 1116, 1122 (Pa. 2000) (holding that the harmless error doctrine underlies every decision to grant or deny a new trial and the moving party must demonstrate prejudice).

Furthermore, even if Administrators had established how they were harmed by the finding that Reading Hospital was corporately negligent but not a cause of harm to D.B., they offer no support for their contention that the trial court erred in denying them judgment n.o.v. or a new trial on this basis. The trial court addressed the issue of Reading Hospital's corporate and vicarious liability and concluded:

> Upon review of the evidence presented in this case, we find that the testimony of Nurse Risko supports the jury's verdict, and her testimony was not so unreliable or untrustworthy so as to shock one's sense of justice. Nurse Risko testified that she reviewed D.B.'s labs while she was at Reading Hospital, saw the critical blast cell count and provided a nurse-to-nurse verbal report to a nurse at HMC that included the blast cell result. Nurse Risko testified several times that her practice included reporting any abnormal and critical values to the receiving facility, and she had no doubt that she informed HMC of the critical blast cell count. The jury was free to believe this testimony, which they may have in light of the verdict that was entered.

- 8 -

Trial Court Opinion, 7/2/18, at 5-6. The trial court noted that it was also possible that the jury did not believe Nurse Risko's testimony, but "found that HMC should have discovered the blast cells on its own outside of any breach of duty of Reading Hospital or its nurses, and the HMC's failure to do so was the sole factual cause of D.B.'s harm." *Id*. at 6.[6] The court concluded that the finding of negligence but no factual cause was not against the weight of the evidence. We have no basis to disturb the trial court's finding.

Regarding the first of two issues implicating their assertion that Reading Hospital was vicariously liable for the negligence of its nurses, Administrators argue that the trial court abused its discretion when it "incorrectly opined that there was evidence that Nurse [Jennifer] Risko did verbally report the blast cells to HMC." Appellants' brief at 35. They contend that the evidence at trial "indisputably concluded that Nurse Risko failed to verbally report the blast cells to HMC and, therefore, breached the standard of care[,]" *id*. at 34, and that the trial court's determination that the verdict was supported by Nurse Risko's testimony "lacked reason." *Id*. at 47.

_____

[6] There is ample support in the record for the trial court's view. Dr. Smith acknowledged that he was required to perform an independent evaluation of D.B., including a blast cell count, during her two-day admission at HMC. N.T. Vol. III, 3/1/18, at 898. He admitted further that if he had reviewed D.B.'s chart, which he had a duty to do but failed to do, he would have initiated a blast cell workup within ten minutes. *Id*. at 890. Based on Dr. Smith's testimony, the jury reasonably could have concluded that his negligence was the sole factual cause of the failure to timely diagnose D.B.'s AML.

The trial court found that the evidence showed Nurse Risko reviewed D.B.'s labs, saw the critical blast cell result, and conveyed that information as part of her oral nurse-to-nurse report to a nurse at HMC. It cited Nurse Risko's testimony that she had "no doubt" that she informed HMC of the blast cell count. The court concluded that the jury was free to believe that testimony, which it stated "was not so unreliable or untrustworthy as to shock one's sense of justice." Trial Court Opinion, 7/2/18, at 5-6.

The record supports the trial court's characterization of Nurse Risko's testimony. Although she did not specifically recall reporting the critical result, she testified that a transfer report includes lab results, and that the results would have been displayed on the screen during the telephone call. *Id*. at 411. Her documentation in the record, "Transfer report given to Natalie, R.N.," indicated that she conveyed the lab results. Nurse Risko testified that, "I have no doubt that I informed [HMC] of the lab report." *Id*. at 429, 434. Her failure to follow several of her other normal practices on that date was brought out on cross-examination, and the jury was entitled to consider that in evaluating her testimony. Since there is record support for the trial court's conclusion that the verdict was not contrary to the weight of the evidence, no relief is due.

Administrators allege next that the trial court erred in failing to address Nurse Katharine Einsel's negligent conduct or its causal connection to the injury sustained by D.B. They claim that, "Nurse Einsel's negligent inaction

was a direct cause of injury to D.B." Appellants' brief at 49. Nurse Einsel was the Reading Hospital ER nurse who received the call from the Hospital's laboratory reporting the critical lab result. Reading Hospital had a policy that the nurse taking the call was to complete a form documenting that result, make it part of the chart, and report it to the patient's nurse or attending physician. There was no evidence that this policy was followed. Administrators contend that, given this evidence, "[t]he jury's determination that Nurse Einsel's negligence did not cause harm to D.B. . . . was against the weight of the evidence." *Id*. at 50. They argue that, had Nurse Einsel not committed these multiple failures, "HMC would have verbally been made aware of the critical lab results by Dr. Sigal or Nurse Risko and accepted D.B. as a patient in their oncology department where she would have immediately been treated for MDS." *Id*. at 50.

Again, we find no error on the part of the trial court. The record supports the trial court's conclusion that there was evidence from which the jury could find that Nurse Risko orally communicated the critical value to a nurse at HMC, and that any failing of Nurse Einsel in that regard was not the factual cause of injury to D.B. Thus, the jury could have determined, based on Nurse Risko's testimony, that the Reading Hospital nurses orally conveyed the critical lab results to HMC. Hence, there is support in the record for the trial court's conclusion that the verdict was not against the weight of the evidence, and no relief is due on that basis.

Administrators' final issue involves the trial court's statement that "there is no factual basis to find that the jury determined its verdict based on a finding that Dr. Smith's actions constituted a superseding, intervening cause." Appellant's brief at 51 (quoting Trial Court Opinion, 7/2/18, at 4). Administrators posit that the only way the jury could logically have found no causation on the part of Reading Hospital "is if the jury believed Dr. Smith's negligence was a superseding, intervening cause of harm to D.B." Appellants' brief at 51. Administrators' contention, at its core, is that the jury failed to apply the factual cause standard in arriving at its verdict.

As the trial court correctly pointed out, the jury was not charged on superseding causes of injury. The court instructed the jury on factual cause, which included an explanation that there may be more than one factual cause that contributes to an injury. None of the parties complained about this aspect of the charge.

Nevertheless, Administrators now speculate that the jury may have looked at "whether the causal link between the original tortfeasor and the plaintiff's injury was broken by an intervening, superseding cause." Appellant's brief at 52. The trial court rejected such a proposition, reasoning that since it did not instruct the jury regarding superseding or intervening cause, there was no factual support for the conclusion that the jury based its verdict on such a finding. Trial Court Opinion, 7/2/18, at 4.

There is no allegation that the factual cause instruction was incorrect or that it failed to convey the applicable law.[7] Furthermore, "[t]he law presumes the jury will follow the instructions of the court." ***Commonwealth v. Eichinger***, 108 A.3d 821, 846 (Pa. 2014). Moreover, the record supports the trial court's conclusion that there is no factual basis from which to conclude that the jury's verdict was grounded in superseding cause. The jury specifically found that the negligence of the Reading Hospital nurses was not a factual cause of injury to D.B., a finding that the trial court concluded was not against the weight of the evidence. No relief is warranted on this ground.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/2019

---

[7] The trial court gave the standard charge for factual cause, which informed the jury that a defendant's conduct need not be the only factual cause, and that other concurring causes that produce an injury do not relieve a defendant of liability "as long as his or her own negligence is a factual cause of the injury." Pa.SSJI (Civ.) 14.20(A).