J-A10021-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| ROSS DI BONO AND LUCILLE DI BONO, H/W | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>: |
| Appellants | :<br>:<br>:<br>: |
| v. | :<br>: |
| | : No. 2524 EDA 2024 |
| LOUIS X. SANTORE, M.D. | : |

Appeal from the Judgment Entered August 20, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 220100261

BEFORE:   STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                         **FILED JUNE 3, 2026**

Ross Di Bono ("Ross") and Lucille Di Bono, husband and wife (collectively "the Di Bonos"), appeal from the judgment entered in favor of Louis X. Santore, M.D. ("Dr. Santore") in this medical malpractice action. After careful review, we affirm.

The trial court summarized the relevant factual and procedural history of this matter as follows:

> [I]n December . . . 2020, [Dr. Santore] diagnosed . . . Ross . . . with a cataract in his right eye and recommended that [he] come in for surgery on January 7, 2021.  Prior to the operation, [Dr. Santore] wrote a pre-operative order to [Ross'] medical care providers instructing them to review [Dr. Santore's] post-operative care sheet with [Ross].  This sheet also contained post-operative instructions for [Ross].  [Dr. Santore] also sent a prescription for antibiotic eye drops with detailed instructions on their application to [Ross'] pharmacy, which [Ross] received.

_____

[*] Former Justice specially assigned to the Superior Court.

On the day of the surgery, [Dr. Santore] encountered a complication in removing the final quadrant of [Ross'] lens that allowed vitreous material to enter the anterior chamber of the right eye. Testimony during trial from both parties confirmed that such complications can occur in the absence of negligently performed medical care. However, it may also place a patient at a higher risk of infection. Once [Dr. Santore] noticed the complication, he ceased surgery and began making arrangements for [Ross] to see a retinal specialist. [Dr. Santore] contacted Mid-Atlantic Retina from the operating room, specifically hoping to connect with Dr. Omesh Gupta [("Dr. Gupta")] so that he could immediately refer [Ross] to him. [Dr. Santore] spoke . . . with Dr. Gupta thereafter, arranging for [Ross] to visit Dr. Gupta for evaluation that same day, January 7, 2021.

During their post-operative consultation on January 7, [Dr. Santore] orally conveyed to [Ross] that he should avoid taking the prescribed antibiotic eye drops until receiving Dr. Gupta's examination and recommendations. [Dr. Santore] had the understanding that he had fully transferred care to Dr. Gupta, therefore[,] he did not schedule a follow-up visit in the days following the surgery. Typically, such a [follow-up] visit, alongside the administration of antibiotic eye drops, would be necessary in order to catch and/or prevent infection, such as endophthalmitis. Dr. Gupta instructed [Ross] to continue the use of the eye drops following their visit, but [Ross] admitted that he did not administer the eye drops for three days following the surgery. Eventually, [Ross] developed endophthalmitis in his right eye, [as well as uveitis and retinal detachment, necessitating additional surgeries, and] resulting in loss of vision and use of his eye.

[The Di Bonos] initiated the current action in January 2022, [against, *inter alia*, Dr. Santore, Dr. Gupta, and Mid-Atlantic Retina.] [T]he case proceeded to [a] jury trial [solely against Dr. Santore] on June 6, 2024. [At trial, the Di Bonos presented the testimony of Robert D. Fechtner, M.D. ("Dr. Fechtner"), who testified that Dr. Santore deviated from the standard of care, particularly with respect to his procedures in patient handoff, lack of post-operative communication, and instructing Ross to not use the prescribed antibiotic eyedrops. Dr. Fechtner opined that these deviations in the standard of care substantially contributed to Ross' endophthalmitis. Conversely, Dr. Santore and his medical

expert, Michael E. Sulewski, M.D. ("Dr. Sulewski"), both testified that not only did Dr. Santore not deviate from the standard of care in patient handoff procedures, but that endophthalmitis can occur even if a patient is taking antibiotic eyedrops. Dr. Sulewski did not concede that Ross suffered endophthalmitis. Dr. Sulewski did not dispute that Ross suffered uveits and retinal detachment, but he attributed these conditions to Ross' delay in using the antibiotic eyedrops. Notably, Dr. Gupta testified that, during his January 7, 2021 appointment with Ross, he confirmed that Ross had obtained the antibiotic eyedrops that Dr. Santore had prescribed, and he specifically instructed Ross to use the antibiotic eyedrops that Dr. Santore had prescribed. Additionally, Ross testified at trial that he failed to use the antibiotic eyedrops for the three days following the aborted cataract surgery.] At the conclusion of trial, the jury returned a verdict in favor of [Dr. Santore], finding that while he had acted negligently in breaching the standard of care, this conduct was not the factual cause of the harm suffered by [the Di Bonos]. . . .

Trial Court Opinion, 7/17/25, at 1-3, 7-8.

The Di Bonos filed a timely post-trial motion in which they argued that the verdict was against the weight of the evidence and requested the entry of judgment notwithstanding the verdict ("JNOV") in their favor on the issues of negligence and causation, and a new trial on damages only. In the alternative, they requested a new trial on the issues of causation and damages, or in the alternative, a new trial on all issues. The trial court denied the motion. The Di Bonos thereafter filed a timely notice of appeal. The trial court did not order them to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Upon directive from this Court, the trial court authored an opinion pursuant to Rule 1925(a).

The Di Bonos raise the following issue for our review: "Whether the trial court abused its discretion in refusing to grant a new trial when the weight of

the evidence indicates that Dr. . . . Santore['s] negligence was a factual cause of . . . Ross['] injuries."  Di Bonos' Brief at 4.[1]

Our standard of review in this area is well settled and extremely limited: The decision whether to grant or deny a new trial based on the weight of the evidence is one that lies within the discretion of the trial court and will not be overturned unless the court grossly abused its discretion or committed an error of law which controlled the outcome of the case.  ***See Turney Media Fuel, Inc. v. Toll Bros.***, 725 A.2d 836, 841 (Pa. Super. 1999).  The weight to be accorded to the evidence and testimony presented at trial is exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses.  ***See Brown v. Trinidad***, 111 A.3d 765, 770 (Pa. Super. 2015).  A new trial based on weight of the evidence issues will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice.  ***See Cangemi v. Cone***, 774 A.2d 1262, 1265 (Pa. Super. 2000).  An appellant is not entitled to a new trial where the evidence is conflicting, and the finder of fact could have decided either way.  ***See id***.

_____

[1] On appeal, the Di Bonos have abandoned their claim that the trial court should have entered JNOV on the issues of causation and damages.  Instead, they confine their single issue on appeal to a claim that the trial court should have granted them a new trial solely on the issue of causation because the jury's determination that Dr. Santore's negligence did not cause the Di Bonos' damages was against the weight of the evidence.

Importantly, this Court's review of a challenge to the weight of the evidence is a review of the trial court's exercise of discretion in weighing the evidence, not of the underlying question of whether we believe that the verdict is, in fact, against the weight of the evidence. *See In re Mampe*, 932 A.2d 954, 960 (Pa. Super. 2007). This Court may not reweigh the evidence. *See Sundlun v. Shoemaker*, 617 A.2d 1330, 1334 (Pa. Super. 1992). As such, the test is not whether this Court would have reached the same result on the evidence presented, but, rather, after due consideration of the evidence found credible by the jury, and viewing the evidence in the light most favorable to the verdict winner, whether the trial court could reasonably have reached its conclusion. *See Winschel v. Jain*, 925 A.2d 782, 788 (Pa. Super. 2007). Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is or is not against the weight of the evidence. *See Brown*, 111 A.3d at 770. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should or should not be granted in the interest of justice. *See id*. If there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on the weight of the evidence, we must affirm. *See Winschel*, 925 A.2d at 788.

A verdict for the defendant on causation grounds may be set aside as contrary to the weight of the evidence where there is no dispute that the defendant was negligent, and both parties' medical experts agree that the defendant's negligence caused at least some injury to the plaintiff. *See Andrews v. Jackson*, 800 A.2d 959 (Pa. Super. 2002) (holding that where both parties' medical experts agreed that the defendant's negligence in backing his vehicle into the plaintiff's vehicle caused some injury to the plaintiff, the jury must find that the accident was a cause of at least some injury, though it may then find that the injury was incidental or non-compensable).

On the other hand, where the defendant's negligence and its causal relationship to the plaintiff's injury were in dispute, and there was evidence from which the jury could find that the defendant's negligence did not cause the injury, a verdict that the defendant was negligent and that his negligence did not harm the plaintiff cannot be set aside as contrary to the weight of the evidence. *See Koziar v. Rayner*, 200 A.3d 513, 518 (Pa. Super. 2018) (holding that the grant of new trial on weight of the evidence grounds was reversible error, even though defendants were found negligent in some respect and defendants conceded that plaintiff was injured in her fall, because the jury could have found that plaintiff's negligence and not defendant's negligence caused the fall); *see also Corvin v. Tihansky*, 184 A.3d 986 (Pa. Super. 2018) (affirming the trial court's denial of the plaintiff's motion for new

trial based on the weight of the evidence where the evidence at trial was conflicting and the jury could have decided in favor of either party); *Daniel v. William R. Drach Co.*, 849 A.2d 1265, 1268-73 (Pa. Super. 2004) (concluding that "the jury could properly have determined that the [defendant's] negligence did not produce the harm because what caused [plaintiff's] injuries was not his slip and fall on an oily and wet surface, but rather his loss of control of an 800 pound drum that had nothing to do with the condition of the floor"); *Holland v. Zelnick*, 478 A.2d 885 (Pa. Super. 1984) (holding that where the parties' medical experts disagree on whether or not the defendant's actions caused some injury to the plaintiff, the jury can choose to credit the testimony of one expert and reject the testimony of the other expert, and the jury's verdict that the defendant was negligent but that such negligence did not cause plaintiff's injuries was not against the weight of the evidence).

Medical malpractice is a species of negligence; therefore, to prevail in a medical malpractice suit, a plaintiff must plead and prove the four elements of negligence: (1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by the patient were a direct result of that harm. *See Winschel*, 925 A.2d at 788. Unless the medical malpractice is obvious and self-evident, expert testimony is required in order for the plaintiff to sustain

his or her burden of proof with regard to the elements of duty, breach, and causation. *See id*. at 789. The plaintiff must present expert testimony that the acts of the medical practitioner deviated from good and acceptable medical standards, and that such deviation was a substantial factor in causing the harm suffered. *See id*. To establish the causation element in a professional negligence action, the plaintiff is not required to show that the defendant's negligence was the actual "but for" cause of the plaintiff's harm. *Id*. at 788. Rather, under the "increased-risk-of-harm" standard, the plaintiff must introduce sufficient evidence that the defendant's conduct increased the risk of the plaintiff's harm. *Id*. Once the plaintiff introduces evidence that a defendant-physician's negligent acts or omissions increased the risk of the harm ultimately sustained by the plaintiff, then the jury must be given the task of balancing the probabilities and determining, by a preponderance of the evidence, whether the physician's conduct was a substantial factor in bringing about the plaintiff's harm. *See id*. at 789.

With these legal standards in mind, we turn to the Di Bono's arguments on appeal. The Di Bonos concede that, if a jury determines that the plaintiff's injuries were due more to the plaintiff's negligence than to the defendant's negligence, then the defendant is relieved of any liability. The Di Bonos further concede that in a medical malpractice action, when a patient fails to follow the advice of a physician and by doing so causes or increases the harm suffered,

the facts of the patient's noncompliance can be presented to the jury as a defense or in mitigation of damages.

Nevertheless, the Di Bonos point out that the defense medical expert, Dr. Sulewski, testified that Ross' failure to use antibiotic drops following his January 7, 2021 cataract surgery caused his eye infection and subsequent need for retinal detachment surgery. The Di Bonos also point out that, although the relevant standard of care was disputed, Dr. Sulewski conceded that the standard of care following cataract surgery was to instruct the patient to use antibiotic drops. The Di Bonos claim that, because Dr. Sulewski agreed that Ross' failure to use antibiotic drops following his cataract surgery resulted in some injury and required emergency surgery, the jury was bound to find causation.

The Di Bonos posit that, to the extent that Dr. Santore attempted to disprove the causal connection between the absence of postoperative eyedrops and Ross's injury, he was required to present expert medical testimony establishing an alternative cause. In this regard, the Di Bonos argue that Dr. Santore did not present any alternative expert opinion on causation, but rather, argued that Ross was more at fault. According to the Di Bonos, Ross' negligence in failing to use the antibiotic drops for three days following the surgery, despite Dr. Gupta's instructions to do so, is not an alternate explanation on the issue of causation.

The Di Bonos further argue that this alternative testimony only speaks to one of the injuries that Ross sustained in this matter, namely, endophthalmitis. The Di Bonos assert that, while Dr. Sulewski did not concede that Ross suffered endophthalmitis, he did concede other injuries that Ross suffered as a result of not taking his eyedrops. On this basis, the Di Bonos claim that it was not necessary for the jury to have even found that the particular infection suffered by Ross was endophthalmitis where the was no dispute that there was an infection, and no dispute that there was uveitis and retinal detachment.

The Di Bonos contend that the causation evidence presented by their expert was undisputed, no expert for the defense contradicted the evidence that a cause of Ross' harm was his failure to use antibiotic eyedrops following cataract surgery, and that had the eyedrops been used, his risk of eye infection, uveitis, and retinal detachment would have decreased. The Di Bonos assert that the jury's conclusion that Ross could have suffered all the harm he experienced even if Dr. Santore had not acted negligently, was based on impermissible speculation.[2]

_____

[2] The Di Bonos purport to raise several additional arguments that were not raised in their post-trial motion, nor are they fairly implied by their general challenge to the weight of the evidence. For example, the Di Bonos claim that, while Ross' own negligent conduct could be considered by the jury when determining comparative negligence, the jury could not have properly considered Ross' failure to take the antibiotic drops while deciding whether Dr. Santore's conduct was a cause of Ross' harm. However, as these

*(Footnote Continued Next Page)*

The trial court considered the Di Bonos' weight-of-the-evidence challenge and determined that it lacked merit. The court reasoned:

> The overarching dispute in this case was whether [Dr. Santore's] deviation in his post-operative standard of care was the factual cause of, or at least substantially contributed to, the harm suffered by [the Di Bonos]. The jury found that [Dr. Santore's] conduct was negligent, but not the factual cause of harm to the [Di Bonos]. [The Di Bonos] argue that this verdict is against the weight of the evidence . . .. To support this request, [the Di Bonos] claim that the verdict bore no rational relationship to the "uncontroverted expert testimony" on the issue of causation presented by [the Di Bonos]. However, [the Di Bonos'] arguments are not only unpersuasive, but misinterpretations of the law.
>
> * * * *
>
> [The Di Bonos] demand a new trial on . . . causation . . .. [The Di Bonos] assert that they are entitled to a new trial because the verdict was against the weight of the evidence and instead based on speculation. Specifically, [the Di Bonos] assert that the evidence unequivocally showed that [Dr. Santore's] negligence was the factual cause of the harm, based on the "sole expert testimony" offered by [the Di Bonos] witness, Dr. Fechtner.
>
> * * * *
>
> In the instant case, [the Di Bonos] are not challenging the reliability of the evidence, but rather contending that the jury's verdict was so against the evidence presented during trial, that it has no rational relationship to it, and is therefore purely speculative. . . . [B]oth [the Di Bonos] and [Dr. Santore] presented evidence on causation, therefore the trial court is rightly within its discretion to defer to the jury's decision-making process and verdict.

_____

additional arguments were not presented to the trial court for its consideration in the post-trial motion, the Di Bonos failed to preserve them for our review. **See** Pa.R.Civ.P. 227.1(b)(2) (providing that grounds not specified in the post-trial motion are deemed waived); **see also** Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal). Accordingly, we decline to address them.

* * * *

The jury in the present case fairly came to a verdict based upon the evidence that was presented during trial. [The Di Bonos] post-trial motion contains no argument that the trial court abused its discretion or committed an error of law. There is no argument that evidence was improperly precluded, or that the jury instructions were improper. Instead, they simply are contesting the jury's interpretation of the evidence presented and the verdict itself. This contention is already on shaky ground due to the well-settled interest in not disturbing a jury's verdict.

. . . In this present case, [the Di Bonos] argue that. . . [Dr. Santore] failed to present any testimony relating to causation that competed with that of [the Di Bonos] expert. . ..

[The cases relied upon by the Di Bonos are] distinguishable from the present case. [T]he jury['s] . . . conclusion . . . was based on multiple testimonies that presented several competing explanations and opinions on [Dr. Santore's] conduct, causation, and the link between the two relating to [the Di Bonos] harm. [The Di Bonos] assertion that the evidence relating to causation is undisputed and uncontradicted in this case is a blatantly inaccurate interpretation of the record. Both [Dr. Santore] and Dr. Sulewski offered competing testimony to Dr. Fechtner's on the issues of both negligence and causation. Both witnesses testified that they did not believe that [Dr. Santore's] conduct breached the duty of care, and stated that endophthalmitis can occur even if a physician acted within the standard of care as presented by Dr. Fechtner.

[T]he jury is tasked with weighing competing evidence, judging its believability, and piecing together a version of events that they find the most credible based on the evidence presented. [T]he jury may have found that [Dr. Santore] acted negligent[ly] in his post-operative procedures and that [Ross] indeed suffered a harm, but was most persuaded by the testimony that asserted that the harm experienced could have occurred even if the patient was taking antibiotic drops. The crux of the case was establishing a causal connection between [Dr. Santore's] lack of proper patient handoff procedure and [Ross'] eye infection. However, the jury was within their purview to acknowledge this harm, but in light of the evidence, conclude that it was a "transient rub of life," in that

[Dr. Santore's] patient handoff was not the factual cause of the infection, but an unfortunate complication not resulting from [Dr. Santore's] negligence. Alternatively, the jury's reasoning may have been [that Ross'] failure to take his prescribed eye drops for three days post-surgery, against the recommendation of Dr. Gupta, was the significant factor to his injury.

In a similar vein, during trial, testimony established that there is an inherent risk of infection in all cataract surgeries, and [the Di Bonos'] expert witness noted that the complications experienced by [Ross] place a patient at a particularly heightened risk of infection. Moreover, while Dr. Fechtner testified that he believed that a post-operative visit would have reduced the chances of [Ross] developing an infection, [Dr. Santore] presented alternative testimony that the infection could have occurred regardless of any post-operative care.

It was the jury's right to balance these probabilities and versions of events presented and thus were well within their ability to not find that [Dr. Santore's] negligence—his post-operative procedures—was the factual cause of the harm occurred. Therefore, the trial court finds that the verdict was not against the weight of the evidence and was rationally related to the evidence presented.

Trial Court Opinion, 7/17/25, at 3-4, 9-14 (citations and unnecessary capitalization omitted)

Based on our review, and after viewing the evidence in the light most favorable to Dr. Santore as the verdict winner, we discern no gross abuse of discretion or error of law by the trial court which controlled the outcome of the case. As explained above, this Court will give the gravest consideration to the findings and reasons advanced by the trial court judge when reviewing its determination as to whether the verdict is or is not against the weight of the evidence. *See Brown*, 111 A.3d at 770. Moreover, one of the least

assailable reasons for denying a new trial is the lower court's conviction that the verdict was not against the weight of the evidence.  **See id**.

Here, the Di Bonos' assertion that the verdict was against the weight of the evidence is based entirely on the fact that the jury found that Dr. Santore's post-operative conduct, although below the applicable standard of post-operative care, was not the cause of Ross' infection and related complications. In advancing their claim, the Di Bonos essentially ask this Court to reweigh the evidence and to accord **no** weight to the expert testimony and evidence provided by Dr. Santore and Dr. Sulewski that the infection could have occurred even if Ross had used the antibiotic eyedrops, and that the infection might not have occurred at all if Ross had used the antibiotic eyedrops, as directed by Dr. Gupta.  Instead, the Di Bonos ask this Court to give **all** weight to the expert testimony presented by Dr. Fechtner that Dr. Santore was negligent to some degree in his post-operative procedures.  This we cannot do, as this Court may not reweigh the evidence.  **See Sundlun**, 617 A.2d at 1334.

Rather, this Court's role is to review the exercise of discretion by the trial court in ruling on the weight claim.  In this regard, we discern no gross abuse of such discretion by the trial court.  As explained above, a new trial cannot be granted on the grounds that the verdict was against the weight of the evidence if the evidence at trial was conflicting and the jury could have decided in favor of either party.  **See Cangemi**, 774 A.2d at 1265.  Further,

where the parties' medical experts disagree on whether or not the defendant's actions caused some injury to the plaintiff, the jury can choose to credit the testimony of one expert and reject the testimony of the other expert. *See Holland*, 478 A.2d at 887.

Here, the question of whether Dr. Santore was negligent in his post-operative procedures was strenuously disputed at trial, and both parties presented expert testimony on the issue. The Di Bonos presented the testimony of Dr. Fechtner, who testified that Dr. Santore deviated from the standard of care with respect to his procedures in patient handoff, lack of post-operative communication, and instructing Ross to not use the prescribed antibiotic eyedrops until after he had been evaluated by Dr. Gupta. Conversely, Dr. Santore and his medical expert, Dr. Sulewski, both testified that Dr. Santore did not deviate from the standard of care in patient handoff procedures.

Similarly, and contrary to the Di Bono's assertions otherwise, the question of whether Dr. Santore's conduct caused or substantially contributed to the infection was also vigorously disputed, with both parties presenting expert testimony on the issue. Dr. Fechtner opined that Dr. Santore' deviations in the standard of care substantially contributed to Ross' endophthalmitis. On the other hand, both Dr. Santore and Dr. Sulewski opined that endophthalmitis can occur even if a patient is taking antibiotic eyedrops, and that Ross' failure to use the antibiotic eyedrops, as directed by

- 15 -

Dr. Gupta. increased the risk of an infection. Additionally, Dr. Gupta testified that he instructed Ross to use the antibiotic eyedrops during their January 7, 2021 appointment, which followed the aborted cataract surgery, and Ross testified at trial that he failed to use the antibiotic eyedrops for the three days following the aborted cataract surgery.

Given that both negligence and causation were deeply contested and the evidence at trial was conflicting, and in view of the fact that there was ample evidence from which the jury could reasonably infer that, despite some deviation by Dr. Santore from the applicable standard of post-operative care, such deviation was not a substantial factor in bringing about Ross' eye infection, we discern no gross abuse of discretion by the trial court in denying the Di Bonos' request for a new trial on causation. *See Koziar*, 200 A.3d at 518.

In arriving at this conclusion, we emphasize that the mere fact that there is a finding of negligence and an undisputed injury does not obligate a jury to make an additional finding that the defendant's negligence caused or substantially contributed to the plaintiff's injury. *See Daniel*, 849 A.2d at 1268 (rejecting the notion that "regardless of the factual circumstances, a finding of negligence combined with an uncontroverted injury automatically requires a finding that the negligence was a substantial factor in causing the accident that caused the injury").

Thus, in the instant matter, the fact that there was a finding of some negligence and uncontroverted medical evidence that Ross suffered an infection did not, without more, relieve the Di Bonos of their burden of proving that Dr. Santore's deviation from the standard of care for post-operative procedures (*i.e.*, not instructing Ross to start taking the eyedrops and not scheduling a follow-up appointment) was a substantial factor in the development of the infection and Ross' resulting complications. In this regard, the jury was free to credit the defense expert testimony presented by Dr. Santore and Dr. Sulewski that the infection could have occurred even if Ross had used the antibiotic eyedrops, and that the infection might not have occurred at all if Ross had used the antibiotic eyedrops starting on January 7, 2021, as directed by Dr. Gupta. On this basis, we conclude that the Di Bonos' weight challenge merits no relief. Accordingly, we affirm the judgment entered in favor of Dr. Santore.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/3/2026