J-A10006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARY DARWISH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER EINSPAHR | : | No. 2588 EDA 2019 |

Appeal from the Judgment Entered July 26, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  00040 February Term, 2018

BEFORE:   BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    Filed: September 24, 2020

Mary Darwish appeals from the July 26, 2019 judgment[1] entered on the trial court's order vacating and molding the jury verdict in favor of Ms. Darwish from an award of $50,000 to $0.   After careful review, we vacate the judgment, vacate the trial court's order molding the jury award for future medicals, and remand for entry of judgment on the jury verdict.

This lawsuit arose out of an automobile collision on December 12, 2016, at the intersection of the 6600 block of Eastwood Street and Unruh Avenue in the City of Philadelphia.  On that day, Mr. Einspahr failed to heed the stop sign

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Ms. Darwish purported to appeal from the July 22, 2019 order vacating and molding the jury's verdict.   However, the appeal properly lies from the judgment entered July 26, 2019.  We have amended the caption accordingly.

on Unruh Street. Instead, he entered the intersection where the front end of his vehicle impacted the rear passenger-side quarter panel of Ms. Darwish's vehicle as she was proceeding on Eastwood Street. The impact caused her car to spin around, and she hit her head on the driver's side window.

Ms. Darwish, a thirty-year-old mother, was transported to a local hospital, treated, and released. For eight months, she saw her chiropractor two to three times per week for complaints of pain in her neck and back. Therapy provided only temporary relief. Subsequent testing was ordered, including MRIs of her neck and back and EMGs. The tests revealed that she had two herniated discs at C-4 and C-5, radiculopathy, and an aggravation to a disc injury in her lower back. At the time of trial, she was still experiencing pain in her neck and back, and reported difficulty in lifting heavy items and numbness in her neck.

Ms. Darwish filed a complaint in negligence against Mr. Einspahr asserting claims for personal injury and property damage.[2] In addition to

---

[2] Ms. Darwish had chosen the limited tort option in her motor vehicle insurance coverage. That option limits the rights of the insured to seek financial compensation. With limited tort, an insured "may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of 'serious injury' as set forth in the policy." 75 Pa.C.S. § 1705(d). The Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") defines serious injury as "a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. § 1702. Consequently, Ms. Darwish could only recover non-economic damages for pain

contesting liability, Mr. Einspahr challenged Ms. Darwish's damages. He maintained that she sustained no severe impairment that would entitle her to non-economic damages for pain and suffering, and that her injuries were the result of an earlier accident.

Dr. Maxwell Stepanuk, Jr., a board-certified orthopedic surgeon, causally linked Ms. Darwish's injuries to this accident, indicated that they were serious and permanent, and opined that she sustained a severe impairment of bodily function in the accident. He also opined that Ms. Darwish's injuries would require medical care and treatment in the future, and delineated the expenses attendant to such care.

Following a three-day trial at which Dr. Stepanuk testified via videotaped deposition, the jury answered special interrogatories finding that Mr. Einspahr was negligent, that Ms. Darwish was not negligent, and that Mr. Einspahr's negligence was the factual cause of harm to Ms. Darwish. The jury found that Ms. Darwish did not suffer severe impairment of bodily function, but it awarded $50,000 in economic damages to compensate her for future medical expenses.

Mr. Einspahr orally moved for judgment notwithstanding the verdict ("JNOV") immediately after the verdict, contending that the award of future

---

and suffering if the jury concluded that she had sustained a severe impairment of bodily function in the accident, a determination usually made by the jury. *See Brown v. Trinidad*, 111 A.3d 765, 771 (Pa.Super. 2015).

medicals was inconsistent with the jury's finding of no severe impairment of bodily function, and that none of the treatments proposed was consistent with a $50,000 award. *See* N.T. Trial (Jury) Vol. 1, 3/7/19, at 185. The trial court denied the motion, surmising that the jury believed Ms. Darwish was injured despite the lack of serious impairment, and that the verdict was probably a compromise. The court twice-stated on the record that it would not disturb the jury verdict, but invited the defense to file a post-trial motion on whether the jury should have heard the testimony regarding future medical expenses. *Id*. at 187 ("I think that it was wrong to let the jury hear that $200,000 about the future medical expenses. And I believe that that could have been an error."). The court posited that a new trial on damages might be necessary on that basis.

Mr. Einspahr filed a motion for post-trial relief seeking JNOV, a new trial, or a remittitur. He alleged therein that he was entitled to judgment notwithstanding the jury's $50,000 award in favor of Ms. Darwish because "the amount of future medical expenses was improperly presented to the jury as the testimony was speculative, against the weight of the evidence, equivocal, and contrary to law." Motion for Post-Trial Relief, 3/18/19, at ¶24. He averred further that there was no proof that the amounts of the expenses were recoverable under § 1722 of the Motor Vehicle Financial Responsibility Law ("MVFRL"), and no evidence that Dr. Stepanuk's estimates for the costs of treatment reflected the statutory reductions outlined in § 1797(a) of that

statute. *See id*. at ¶¶32-34. He argued that the $50,000 award bore no rational relationship to the figures Dr. Stepanuk provided for various treatments and procedures. *See id*. at ¶31. Finally, Mr. Einspahr argued that since the jury determined that Ms. Darwish did not sustain a serious impairment of a bodily function, the jury's award of future medical expenses was "grossly excessive and shocks one's sense of justice." *Id*. at ¶36.

The trial court granted Mr. Einspahr's motion for post-trial relief and entered an order molding the verdict to reduce Ms. Darwish's award of future medical expenses from $50,000 to $0, based on a finding that the award was speculative and against the weight of the evidence. Ms. Darwish timely appealed, complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court issued its opinion. Ms. Darwish presents three issues for our review:

> [1] Whether the trial court committed an error of law or an abuse of discretion when it entered remittitur on the basis of the award being speculative, and reduced the jury's award of $50,000.00 in future medical damages to zero damages;
>
> [2] Whether the Court committed an error of law or an abuse of discretion when it entered remittitur on the basis of the award being against the weight of the evidence, and reduced the jury's award of $50,000.00 in future medical damages to zero damages; and,
>
> [3] Did the Court err in law in asserting that the alleged violation of Phila. R.J.A. 1900(h)(1) precludes this Court from considering

the testimony of Appellant's medical expert, Maxwell Stepanuk, Jr., D.O.?[3]

Appellant's brief at 2.

Preliminarily, we note the following. In its July 22, 2019 order, upon consideration of Mr. Einspahr's motion for post-trial relief, the court "granted" the motion, and vacated and molded "the judgment against Defendant entered by the jury on March 7, 2019, . . . to reflect Judgment in favor of Plaintiff with no award of damages." Order, 7/22/19, at 1. While the trial court and parties refer to the court's action as a "remittitur," the trial court did not specifically find the amount of the award to be exorbitant or excessive. *See Rettger v. UPMC Shadyside*, 991 A.2d 915, 920 (Pa.Super. 2010) ("Judicial reduction of a jury award is appropriate only when the award is

---

[3] The videotaped deposition of Dr. Maxwell Stepanuk, Jr. was played for the jury at trial. A transcript of his testimony was provided to the trial court and marked as a plaintiff's trial exhibit. Phila. R.J.A. 1900(h)(1) requires the parties to upload their trial exhibits to the electronic record shortly after the conclusion of trial. Ms. Darwish neglected to upload her exhibits, including the transcript of Dr. Stepanuk. Since Dr. Stepanuk's deposition transcript was not uploaded to the record, the trial court initially ignored his testimony in addressing the issues presented in Ms. Darwish's Rule 1925(b) statement. The court found the violation of Rule 1900 dispositive of the issues, and urged this Court to affirm on that basis. In the event that we would decline to do so, the trial court also addressed the issues as if Dr. Stepanuk's testimony was part of the record.

Pursuant to Pa.R.A.P. 1926(b)(1), this Court ordered Ms. Darwish to upload to the electronic record the transcript of the videotaped deposition of Maxwell Stepanuk, Jr., D.O., which was played at trial. She complied, and we have considered his expert testimony in ruling on the issues raised.

plainly excessive and exorbitant."). Rather, in a footnote in its order, the trial court explained that, "In this case, [Ms. Darwish] presented no testimony or other evidence of past medical expenses and, as such, this Court has determined that the jury award of future medical expenses to [Ms. Darwish] was entirely speculative in consideration of the jury's finding that [she] did not suffer a serious impairment of a bodily function." *Id*. at n.1. In its subsequent Rule 1925(a) opinion, the trial court found that the "damages awarded were inconsistent and entirely speculative as they had no support in the testimony or other evidence presented at trial." Trial Court Opinion, 10/3/19, at 7. That conclusion was based solely on the fact that the jury determined that Ms. Darwish did not suffer a serious impairment of bodily function. *See id*. Since it was not the excessiveness of the award, but the fact that the jury awarded any damages at all that was the impetus for the molding of the verdict, this case does not resemble the traditional remittitur situation.

In reviewing a trial court's order molding the jury verdict to eliminate the award for future medical expenses, we are mindful of the following. "A jury is given wide latitude to fashion a verdict on damages." *Farese v. Robinson*, 222 A.3d 1173 (Pa.Super. 2019) (citing *Nelson v. Hines*, 653 A.2d 634 (Pa. 1995)). "Pennsylvania Rule of Civil Procedure 227.1 gives the trial court the authority to modify a jury's decision or to enter any other order that is appropriate." *See Krock v. Chroust*, 478 A.2d 1376, 1380 (Pa.Super.

1984) (citing **Fish v. Gosnell**, 463 A.2d 1042 (Pa.Super. 1983)).  However, that power is limited.  "The power to mold or more precisely amend a jury's verdict is merely a power to 'make the record accord with the facts, or to cause the verdict to speak the truth.'"  **Id**. (quoting Standard Pennsylvania Practice (Rev. Ed.) Ch. 27, § 72).  We are mindful that there is a presumption of consistency with respect to a jury's findings.  **See Giovanetti v. Johns-Manville Corp.**, 539 A.2d 871, 875 (Pa.Super. 1988) (citation omitted).  Molding the verdict should only be done where the clear intention of the jury is manifested.  **Id**.

In analyzing the propriety of molding a verdict, our scope of review is plenary.  **See Baker v. AC and S,** 755 A.2d. 664, 667, n. 4 (Pa. 2000), citing **Phillips v. A-Best Products Co**., 665 A.2d 1167 (Pa. 1995).  Our standard of review requires us to examine the lower tribunal's ruling for an abuse of discretion or error of law.[4]  **Id**. (citations omitted).

The trial court's first stated reason for molding the verdict and striking the jury's damage award for future medicals was the fact that Ms. Darwish did not offer evidence of past medical expenses.  We observe the following.  In an action for damages arising out of a motor vehicle accident, the MVFRL precludes the recovery of past medical expenses to the extent that they were

---

[4] That same standard and scope of review applies to a remittitur.  **See Smalls v. Pittsburgh-Corning Corp.**, 843 A.2d 410, 414 (Pa.Super. 2004) (explaining we review a trial court's decision to grant or deny a request for remittitur for an abuse of discretion or an error of law).

not paid out-of-pocket. Consequently, in many motor vehicle accident cases, there is no claim for past medical expenses, or evidence of same, despite the fact that the plaintiff sustained injuries and underwent medical treatment.

Such was the case herein. Ms. Darwish went to the emergency room immediately after the accident, received eight months of chiropractic treatment, and underwent MRIs of her neck and back and EMGs of both legs. Although she was injured and received medical treatment, presumably at some expense, it was stipulated that she had no unpaid medical expenses and therefore, would not be making a claim for them.

The trial court concluded that absent evidence of past medical **expenses**, the likelihood of incurring future medical expenses was "speculative." The trial court cites no authority for such a proposition, and we find the logic puzzling. There was considerable evidence from which the jury could conclude that Ms. Darwish was injured, and that she would require medical treatment in the future. In fact, the jury answered in the affirmative that Mr. Einspahr's negligence was a factual cause of harm to Mary Darwish. **See** Verdict Slip at Question No. 2. In light of the MVFRL's statutory constraints on the admissibility and recovery of past medical expenses, we find that the lack of evidence of past medical expenses sheds little light on, and is certainly not determinative of, whether future medical expenses will be incurred or are recoverable.

The second reason the trial court advanced for molding the verdict was that the jury responded in the negative to the special interrogatory asking whether Ms. Darwish suffered a severe impairment of bodily function. *See* Verdict Slip, Question No.6. In short, the court concluded that absent severe impairment, Ms. Darwish could not recover future medical expenses.

Mr. Einspahr urges us to affirm the trial court on the foregoing basis, arguing that the jury's award of $50,000 was inherently inconsistent with its determination that Ms. Darwish had not sustained a serious impairment of a body function. *See* Appellee's brief at 14. He contends further that Dr. Stepanuk's expert testimony on the issue of future medical treatment and the associated costs "became incompetent the moment that the jury chose to disbelieve that Appellant sustained a serious impairment of a body function." *Id*. In his next breath, however, Mr. Einspahr concedes that "simply because the jury did not find a serious impairment would not necessarily preclude [Ms. Darwish] from being awarded future medical damages." *Id*. at 15. He suggests, however, that given the facts, "perhaps [Ms. Dawish] could have been awarded costs of some continuing chiropractic treatment," but Dr. Stepanuk did not offer such testimony. *Id*. He reiterates the trial court's objection that the award of $50,000 bore no rational relationship to the costs of her prior treatment, which were not placed in evidence. He characterizes Dr. Stepanuk's testimony that Ms. Darwish would require pain medication, epidural injections, and surgery in the future as "not based on facts," and

argues that, "by definition this required the jury to speculate on the award of future medicals." *Id*. at 15. Mr. Einspahr points to the trial court's statement that it may have been an error to permit evidence of future medicals as "evidenc[ing] a clear recognition in the immediate aftermath of trial that the jury had based its award on speculation without competent facts in evidence that would support such a substantial award for future medical expenses." *Id*. at 16.

We note first that the purpose of the special interrogatory on the verdict slip regarding severe impairment of bodily function was to determine whether Ms. Darwish was legally entitled to recover non-economic damages for pain and suffering, loss of the pleasures and enjoyments of life, emotional distress and anxiety, disfigurement, and embarrassment and humiliation, in light of her selection of the limited tort option under her auto insurance policy. It did not have any legal effect on her entitlement to damages for future medical expenses, and the trial court so advised the jury. In instructing the jury regarding economic damages, the trial court correctly stated:

> Now, any award of money damages must fairly and adequately compensate the plaintiff for all the physical and financial injuries she has sustained as a result of the collision. The amount you award today must compensate the plaintiff completely for damages sustained in the past, as well as damages the plaintiff will sustain in the future.
>
> . . . .
>
> **Here, the economic damages claimed are future medical experiences [sic]. If you find that the defendant's negligence caused the plaintiff an injury, regardless of**

- 11 -

**whether it was a serious impairment of a body function, the plaintiff is entitled to be compensated for all medical expenses that you find she will reasonably incur in the future for the treatment and care of any continuing injuries.**

N.T. Trial (Jury) Vol. 1, 3/7/19, at 168-69 (emphasis added).

Hence, the jury was correctly instructed that it could award damages for future medical expenses even though it found no serious impairment of bodily function. It follows then that, in finding that Ms. Darwish suffered no severe impairment of a bodily function, but that she would require treatment and incur medical expenses in the future due to injuries sustained in the accident, the jury did not fail to apply the law. In subsequently conflating the jury's finding of no severe impairment with no entitlement to future medical expenses, the trial court erred. That error was the basis for its finding that the $50,000 award of future medicals was against the weight of the evidence.

The record reveals that sufficient, competent, expert medical evidence was presented herein to warrant submission of future medicals to the jury.[5] Dr. Stepanuk testified via videotaped deposition that he examined Ms. Darwish, took a history, and reviewed her medical records. Stepanuk

---

[5] Although the trial court expressed second thoughts about whether it should have submitted future medical expenses to the jury, we find no error in this regard. Prior to doing so, "it is necessary that there be competent testimony of the likelihood that the disability will persist into the future . . . from which the jury can reasonably infer what the probable consequences of the injury will be, and award damages." ***Baccare v. Mennella***, 369 A.2d 806, 807 (Pa.Super. 1976). Dr. Stepanuk, and to a lesser extent, Ms. Darwish, provided competent evidence of same.

Videotaped Deposition, 3/6/19, at 5. At the time, she was thirty-one years of age. Ms. Darwish complained of pain in her neck upon palpation. *Id*. at 12. She had reduced range of motion and pain when she moved her head side-to-side. *Id*. at 13. She reported decreased sensation in both her left arm and left leg, and numbness in her left arm. *Id*.

Dr. Stepanuk reviewed the MRIs of Ms. Darwish's neck and back taken after her earlier accident and compared those findings to the MRIs of the same areas taken after this 2016 accident. He identified two new herniated discs at C4 and C5, together with anular tears. Based upon his review of the records and films, his physical examination, Ms. Darwish's complaints of neck pain and pain radiating down her left arm, he opined that the herniated discs and anular tears were caused by the December 12, 2016 accident. *Id*. at 17-18. He described the disc herniations and tears as "serious injuries" that "usually don't get better" and cause future problems with prolonged pain and numbness. *Id*. at 18.

Dr. Stepanuk then reviewed an MRI of Ms. Darwish's back after the earlier accident, and compared it to the MRI results following this accident. At L-5, Ms. Darwish now exhibited a bulge that was an aggravation of her condition in 2015. *Id*. at 21. He concluded that, "Within a reasonable degree of medical certainty, Ms. Darwish sustained a cervical strain and sprain; . . . anular tear at C-3 and C-6; with a disc herniation at C-4 and C-5., with disc degeneration." *Id*. at 22-23. With the exception of the degeneration,

"[e]verything else was due to the accident." *Id*. at 23. Her left upper extremity radiculopathy, as well as lumbar pain secondary to a disc bulge at L-5, were all a result of the December 2012 accident. *Id*. at 23. The EMG nerve conduction testing performed after this accident showed damage to the L-5-S1 nerves in both legs, while the previous study was normal in this regard.

Dr. Stepanuk opined that the disc herniations and radiculopathy were permanent. It was his opinion, "within a reasonable degree of medical certainty, that Ms. Darwish did sustain a severe impairment of her bodily function." *Id*. at 25. In addition, it was more likely than not that, due to the disc pathology and nerve damage, she would continue to experience these symptoms in the future and require treatment and care. *Id*.

Dr. Stepanuk described the types of treatment that would be needed in the future. He recommended pain control injections to reduce inflammation and pain. Should her pain become intolerable, the next step would be surgery to remove the affected discs. *Id*. at 27. He testified he was familiar with the cost of these procedures. Epidurals cost $6,000 for a series of injections, and he recommended two series each for her neck and back. A cervical discectomy costs $125,000 and a lumbar discectomy costs $60,000. He added an additional $5,000 per year for at least five years for medication and therapy. *Id*. at 30. Dr. Stepanuk confirmed that all of these opinions were rendered to a reasonable degree of medical certainty. *Id*. at 30-31.

The foregoing expert medical testimony was properly admitted. It was not speculative. Moreover, it was legally sufficient to support the jury's award of $50,000 in future medicals regardless of its finding of no severe impairment. The specific amount of damages awarded, which was considerably less than the $250,000 Dr. Stepanuk estimated, may reflect the jury's belief that while Ms. Darwish suffered injuries that would require conservative future medical treatment, the injuries were not so severe as to require the surgical intervention Dr. Stepanuk forecast. Or, it may indicate that the jury was somewhat persuaded by the conflicting opinions of Mr. Einspahr's expert, Michael L. Brooks, M.D. In any event, it was the jury's prerogative to credit some, all, or none of Dr. Stepanuk's opinions and testimony. *Randt v. Abex Corp.*, 671 A.2d 228, 233 (Pa.Super. 1996).

In light of the absence of legal error in the conduct of the trial,[6] as well as our determination that the jury followed the law in rendering its verdict, and the award of damages for future medical expenses was supported by competent evidence, we find that the trial court erred and abused its discretion

_____

[6] Mr. Einspahr also argued below that Dr. Stepanuk's expert testimony regarding the cost of future medical expenses should not have been permitted because there was no proof that the amounts of the expenses were recoverable under §1722 of the Motor Vehicle Financial Responsibility Law, or that estimates for the costs of treatment reflected the statutory reductions outlined in §1797(a) of that statute. Similar arguments were rejected by this Court in *Farese v. Robinson*, 222 A.3d 1173 (Pa.Super. 2019).

in molding the jury's award of damages for future medical expenses from $50,000 to $0.

Judgment vacated. Order molding the verdict vacated. Case remanded for entry of judgment on the jury verdict.

Judge Shogan joins the memorandum.

Judge Pellegrini concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/24/20